|    |     |
|----|-----|
| 17 | 515 |
| 104 | 315 |
| 17 | 515 |
| 119 | 881 |

No. 87.—WILLIAM F. JANES *et al.* plaintiffs in error, *vs.* THE TRUSTEES OF THE MERCER UNIVERSITY, defendants in error.

[1.] A party to a suit is not a competent witness for himself.

[2.] It behooves him who alleges a person to be incompetent as a witness, from interest, to show the interest.

[3.] Representations which do not appear to have been heard, or to have been acted on by a party, can constitute no ground of defence or of action for that party.

[4.] If, on application to a person for a donation to a school, it is represented to him that the school is to be a manual labor school, and he agrees, on that representation, to make a donation, and afterwards, the manual labor

part of the school is abolished, the representation is a fraud on him, and he is not bound to make the donation.

Assumpsit, &c. in Polk Superior Court.    Tried before Judge IRWIN, March Term, 1854.

The trustees of Mercer University commenced suit against the executors of Thomas G. Janes, upon the following instrument:

"$1.000.    In consideration of the importance of literary and religious institutions to the well-being of society, I hereby promise to pay the Treasurer of the Ga. Baptist Convention, or bearer, for the use of the Mercer University, Two Hundred Dollars on the 1st January, 1838; Two Hundred Dollars on the 1st January, 1839; Two Hundred on the 1st January, 1840; Two Hundred Dollars 1st January, 1841; Two Hundred Dollars 1st January, 1842, for the faithful payment of which I hereby bind myself, my heirs and assigns.    Oct. 30th, 1837.            (Signed)            THOS. G. JANES."

The defence set up was a failure of consideration; and also a material alteration in the contract in this: that the agreement and understanding was, the subscription of Thos. G. Janes was for a manual labor institution, and that without his consent the manual labor feature had been abolished in the Mercer University.

George W. West, one of the executors of Janes, pleaded *puis darrein continuance,* a dismission from the Ordinary from his trust as executor, and now moved to be dismissed from this suit, or that his plea be first tried, as he was a material witness for defendants.    All of which was refused by the Court. After the letters dismissory were in evidence, the other defendants offered George W. West as a witness.    The Court refused to admit him as a witness, and this decision is assigned as error.

The plaintiffs below offered in evidence the depositions of B. M. Sanders and Thomas J. Burney; to which defendants

objected, on the ground that they were officers of Mercer University; and it appeared, from the depositions themselves, that this money, if collected, would constitute a part of a fund, the interest of which was applied to the payment of their salaries. The Court over-ruled the objection, and this is assigned as error.

Defendants proposed to prove by several witnesses, that before and at the time the note sued on was given (for the purpose of showing that the note was fraudulently procured), that Charles D. Mallory and other agents of the said institution, fraudulently represented to the community, from the pulpit and other public meetings, and privately, that the funds to be raised from subscribers (of whom Janes was one), were to constitute a fund to support a manual labor school; which testimony was rejected by the Court, on the ground that it did not appear that these representations were made in the presence or hearing of Janes. This decision is assigned as error.

There was a good deal of evidence introduced, showing that the university at first included the manual labor feature, which was abandoned in 1844, without the consent of T. G. Janes. The Court charged the Jury, that the character and object of the contract must be ascertained from the writing—all parol negotiations being merged therein, and the contract cannot be added to or varied by parol.

Defendant's Counsel requested the Court to charge—

1st. That if the Jury find that the school now in use is different, materially, from the one to which the defendant's testator subscribed, and without his consent, the defendants are not bound to pay this subscription.

2d. If the note was procured by representations that this was to be a manual labor institution, and he subscribed upon that representation, and the manual labor department was abolished, it was a fraud on his rights, and the defendants are not bound to pay.

3d. That if testator signed the instrument sued on for the benefit of the Mercer University, and at the time he signed the

same it was a manual labor school, and that the same has been altered in a material part without his consent, the estate of testator is relieved.

The Court declined so to charge, but instructed the Jury— that they must look to the contract under the legal rules laid down by the Court, and if they should find a material alteration in that, then the defendant's testator was discharged; that the abolition of the manual labor feature was not such a material alteration, unless it was in violation of the contract of the parties as contained in the instrument sued on; that fraud was never presumed, but must be proven; yet, it may be proven by circumstantial evidence; that the Jury must look to the contract to ascertain the object of the subscription or donation; and if a material alteration has been made, after the making of the contract, without the consent of Thomas G. Janes, he was discharged; but if, from the evidence, the Jury should find that the subscription was made in consideration of the importance of religious and literary institutions to the well-being of society, their abolishing the manual labor feature, if it was proved, was not such a material alteration, in the opinion of the Court, as would discharge the defendant, unless it was detrimental to Janes or some of the objects of the subscription— *all* of which were facts to be determined by the Jury and submitted to them."

All of which charge and refusal to charge are assigned as error.

UNDERWOOD & MITCHELL, for plaintiffs in error.

ALEXANDER and McDONALD, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

As long as the plea, *puis darrein continuance* of Geo. W. West remained undisposed of, he continued a party to the suit. That plea was not disposed of when he was offered as a wit-

ness. He was therefore, when offered as a witness, a party to the suit.

[1.] And a party to a suit is not a competent witness for himself.

It does not appear that the payment of the salaries of Sanders and Burney was at all dependent on the result of the suit. For aught that appears to the contrary, the interest of the fund already in hand was sufficient to pay them their salaries. It does not appear, therefore, that they were to gain or to lose anything by the verdict, go as it might.

[2.] And unless interest be made to appear in the person offered as a witness, it is to be presumed that interest does not exist.

[3.] It does not appear that Thomas G. Janes heard the representations made by Mallory and the other agents of the Mercer University, that the sums which might be subscribed were to constitute a fund to support a manual labor school. But unless he heard those representations and acted on them, it is manifest that they can constitute for him no ground of defence.

One of the requests to charge was as follows: "If the note was procured by representations that this was to be a manual labor institution and he subscribed upon that representation, and the manual labor department was abolished, it was a fraud on his rights, and the defendants are not bound to pay."

Fraud vitiates all contracts—much more will fraud vitiate all mere donations. Fraud may consist in false representations. (1 *Story's Eq.* §191.) To make a misrepresentation fraudulent, *Story* says: "the misrepresentation must be of something material—constituting an inducement or motive to the act or omission of the other party, and by which he is actually misled to his injury." (§195 *Story's Eq. Id.* §191.)

Now if the manual labor feature in a manual labor school be not a material feature of such a school, it is difficult to say what is. It is *the* feature of such a school.

[4.] When, therefore, on application to one for a donation to such a school, a representation is made to him that the school is to be a manual labor school, the representation is one

of a material kind. If, therefore, the representation be acted upon and a donation made, and then the manual labor part of the school be abolished, an injury, by means of the false representation, is inflicted on the donor. He is deprived of his money. The transaction amounts to a fraud on him.

Numerous analogies to frauds of this sort are to be seen in the cases of part performance of contracts which are within the Statute of Frauds. One party, after he has allowed the other party to perform a contract which is forbidden by the Statute of Frauds, is not permitted to plead that Statute as an excuse for not performing the contract on his part. And why? because, to permit him so to plead the Statute, would be to permit him to perpetrate a fraud on the other party. The subsequent matter of a disposition or offer to plead the Statute is considered as having relation back to the time of the making of the contract, and to be evidence of an original intention to deceive; an original intention to use the Statute as an engine of fraud.

So, here, the abolition of the manual labor branch of the school, subsequently to the time of procuring this donation, may be considered as having relation back to that time, and as being evidence tending to show an intention then existing, to effect the abolition of that branch, by means of representation that it was to be permanent, should have been made to subserve a purpose—that of procuring donations to the school.

And that these representations were not put in the writing, made no difference. Parol evidence is admissible to show fraud in the procuring of a written contract. No rule is better established than this. (3 *Phill. Ev.* (*notes*) 1475.)

This request, then, in the opinion of this Court, was proper; and the Court below should have charged in accordance with it.

I incline, myself, very much, to think that if, at the time when this subscription was made, the Mercer University, for whose use it was expressly made, was a manual labor school, the subsequent abolition of the manual labor department was, of itself, sufficient to release the subscriber from his subscrip-

tion. In such a case the subscription, by its very terms, would be for the use, alone, of that which was a manual labor school. How, then, according to the strict terms of the contract, could the subscription be called for to be applied to any other use than that of a manual labor school?

How is such a case to be distinguished from that of *Winter vs. The Muscogee Rail Road Company,* (11 *Ga. R.*) In that case, the corporation, after obtaining Winter's subscription for a portion of its stock, changed the course of the road without his consent. And it was held that this released Winter from his subscription. Should a person who is a voluntary contributor to a corporation, be in a worse situation than one who is a contributor for value; that is, for stock in the corporation? I do not see why he should be.

Be this, however, as it may, this Court is of opinion, that taking the representations into the account, the Court below should at least have given the request aforesaid, already noticed, in charge to the Jury. And therefore, it is of opinion that there should be a new trial.