## McCRARY v. PRITCHARD et al.

1. Where in a suit by the payee of a promissory note against the makers thereof the defendants pleaded that the note was given to the plaintiff for part of the 'purchase-money of an insurance-agency business sold by him to them, and that the consideration of the contract between the*parties had failed to an extent equal to the amount represented by the note, because the plaintiff "represented to defendants that he had made certain profits out of said business for the three years previous to said purchase, and said purchase was based upon the amounts alleged to have been made, but said representations as defendants have since discovered were untrue," a demurrer to the plea upon the ground that it failed " to set forth how much profits plaintiff represented he had made, . . or how much damage had resulted to defendants" by reason of the alleged misrepresentations of the plaintiff, should have been sustained.

2. Where there is nothing in the pleadings to show that the contract between the parties was in writing, the question whether a plea seeks to contradict or vary a written contract can not be raised by demurrer.

3. The amended answer of the defendants did not show "on its face that no damage could have resulted to" the defendants on account of the alleged misrepresentations of the plaintiff, and was, therefore, not demurrable upon this ground.

4. Fraudulent misrepresentations as to a material fact, made by one party to a written contract for the purpose of inducing the other party to enter into it, may be proved by parol.

5. It was erroneous to allow a witness to state to the jury his opinion as to the amount of damages which the defendants had sustained in consequence of the misrepresentations of the plaintiff in reference to the property at the time he sold it to the defendants.

6. When testimony is objected to as a whole and some portion of it is admissible, it is not erroneous to overrule the objection.

7. Where a purchaser of property is entitled to recover for damages sustained by him in consequence of his reliance upon false and fraudulent representations of the vendor in reference to matters affecting the value of the property, the measure of damages is the difference between the actual value at the time of the purchase and what the value would have been if the property had been as it was represented to be by the seller.

Argued March 14, — Decided March 30, 1904.

Complaint on note. Before Judge Taliaferro. City court of Sandersville. March 11, 1903.

*Rawlings & Howard,* for plaintiff. *Hardwick & Hyman, James K. Hines,* and *Marion Turner,* for defendants.

FISH, P. J. J. A. McCrary brought suit, in the city court of Sandersville, against H. L., L. J., and Mary J. Pritchard, for the sum of $200.48 principal, and also interest and attorney's fees, upon a promissory note for $250, dated April 5, 1902, and due,

October 1, 1902, upon which there was a credit of $49.52, dated September 15, 1902.    The defendants filed an answer which was demurred to.    Pending the demurrer they amended their answer, and the plaintiff then demurred to the answer as amended.    Except as to one paragraph of the original answer and a similar paragraph of the amendment, the court overruled the demurrers, and the plaintiff filed exceptions pendente lite.    Upon the trial there was a general verdict for the defendants.    The plaintiff made a motion for a new trial, which was overruled, and he excepted.

1. Error is assigned, in the bill of exceptions, upon the overruling of the demurrer to the original answer and the overruling of the demurrer to the answer as amended.    In the original answer the defendants admitted giving the note sued on, but alleged that it was given to the plaintiff solely for the purchase of a certain fire-insurance business, which he had been conducting in the city of Tennille for several years, the sale consisting in the transfer of the agency for certain fire-insurance companies, all books, stationery, etc., belonging to such agency, and the good will of the plaintiff; that the business was purchased by the defendants for the purpose of continuing the same at the city of Tennille, which the plaintiff knew, and the plaintiff, " as part of the contract of sale and consideration for said note, represented to defendants that he had made certain profits out of said business for the three years previous to said purchase, and said purchase was based upon the amounts alleged to have been made, but said representations as defendants have since discovered were untrue."    The answer further alleged that the defendants "purchased said insurance business for said purpose, trusting in the representations of the plaintiff;" that the price agreed upon was $450, "defendants paying plaintiff $200.00 cash and giving the note sued upon for the balance, upon which note they paid $49.52 before learning of the facts herein set out."    There was also a paragraph in the answer in reference to an offer by the defendants to rescind the contract, and also an offer of compromise, both of which it was alleged the plaintiff refused; but these things are not material in the consideration of the questions involved here.    The answer concluded as follows:    "Wherefore defendants allege the consideration for said note has completely failed, and that they have paid plaintiff $49.52 more than said business was worth, and pray judgment

against plaintiff for that amount; and of this defendants put themselves upon the country." We think that it is very clear that this answer was subject to the objection, raised by the demurrer, that it wholly failed "to set forth how much profits plaintiff represented he had made in the past three years, . . or how much damage had resulted to defendants" by reason of the misrepresentation of the plaintiff as to the amount of such profits. The allegation that the plaintiff had represented to defendants that he had made certain profits out of the business for the three previous years, and that these representations were untrue, was too general, vague, and uncertain to withstand the demurrer. It will be observed that it was not alleged that the consideration for the contract of purchase had wholly failed, but the effect of the answer was that it had partially failed to an amount equal to the sum for which the note was given. The plea afforded no basis whatever for a comparison between the profits actually made by the plaintiff from the business and the profits which he represented to the defendants he had made; and such a comparison was necessary in order to ascertain whether there was, in the contract of purchase, a failure of consideration, and, if so, to what extent the consideration had failed. The allegation that the plaintiff had represented that he had made " certain profits," and this representation was untrue, was about as uncertain as any allegation could be. Suppose the plaintiff had admitted this allegation of the plea to be true, what sort of a verdict in favor of the defendant could there have been rendered upon this admission ? In a suit for a rescission of a contract alleged to have been procured by fraud, such an admission might authorize a verdict in favor of the party seeking the rescission ; but under a plea of partial failure of consideration, the jury would be unable to determine, from such an admission, to what extent the consideration for the contract had failed. The defendants did not ask for a rescission of the contract, but relied upon their plea of partial failure of consideration to defeat a recovery upon the note given for only a part of the purchase-money. Certainly the plaintiff was entitled to know what representations the defendants expected to prove he had made to them as to the profits of the business for the three previous years, and what they expected to prove the profits of the business for this period actually were. The court erred in not sustaining the demurrer to

the original answer, as the amendment failed to cure this defect therein.

2. The amendment alleged that the plaintiff, at the time the contract was entered into, represented to the defendants " that he did not allow any rebates to any of his patrons, or divide commissions with any of them; " that this was untrue, as the defendants had since discovered that the plaintiff " did have such contracts for divisions of commissions with several of the patrons of said business, which contracts [would] entail on . . defendants a loss of thirty dollars per annum," and materially and seriously impair the value " of the article sold to these defendants, for the following reason; if defendants continue to comply with the agreements and contracts of plaintiff on this subject, the value of the business sold them by plaintiff will be entirely destroyed, because of the fact that all of the insurance companies represented by McCrary, and the agencies of which were transferred to these defendants, . . have rules and regulations prohibiting such division of commissions, and will discharge and remove these defendants as their agents if they divide commissions; on the other hand, if these defendants decline to divide commissions with their patrons in accordance with the precedent established by plaintiff, then the patrons of these defendants will' place their business with other agents and other insurance companies, thereby injuring and damaging the business of these defendants to an amount at least as great as the amount sued for by the plaintiff in this suit." While we think that this amendment to the original answer was plainly open to demurrer, we do not think it was subject to the demurrer which was offered by the plaintiff. It certainly was not demurrable upon the ground that it sought to contradict and vary a written contract which the defendants admitted was entered into by the parties. This was not matter for demurrer; for there was nothing in the original or amended answer which admitted that the parties had entered into a written contract concerning the matters in controversy, other than the contract evidenced by the promissory note sued on, and the note contained nothing which the facts alleged in the amended answer, if proved, could be said to contradict or vary. The note did not even express a consideration other than " value received." A contract was referred to in the plea, but whether it was written or oral did not appear.

That there was a written contract did appear from the evidence introduced upon the trial, but not from any admission in the pleadings of the defendants. Hence the point sought to be made by the demurrer was not one which could be raised on the face of the pleadings. See *Tift* v. *Wight*, 113 *Ga.* 681.

3. Nor was the amended answer subject to demurrer upon the ground that it showed " on its face that no damage could have resulted to " the defendants on account of the alleged misrepresentations of the plaintiff, because it alleged that it was " contrary to the rules of insurance companies to allow rebates to patrons," and therefore, as the answer did not allege " that plaintiff had made contracts with any of the patrons which bound these defendants to " continue to allow rebates, " defendants were not bound to allow said rebates, and no loss or damage could result." The fact that there was nothing in the answer which showed that the defendants were bound to continue to conduct the business in the same way in which they alleged the plaintiff had conducted it did not show that no damage could have resulted to them if the plaintiff had made the misrepresentations alleged. They might not have been bound to continue to conduct the business as they alleged the plaintiff had conducted it, and yet we can well see how they could have been damaged whether they did continue to do so or refused to follow his alleged practice in this respect. In either event, the value of the thing bought might be less than it would have been if it had been as the plaintiff represented it to be. Whatever else may be said of the amended answer, it did not show " on its face that no damage could have resulted " to the defendants from the alleged misrepresentations of the plaintiff. We simply decide that the amendment to the answer was not subject to demurrer upon the grounds taken.

4. In the motion for a new trial it was alleged that the court erred in admitting, over the objection of the plaintiff, the testimony of one of the defendants as to the alleged fraudulent misrepresentations of the plaintiff at the time the contract was entered into. The objection made to the admission of this testimony was, that its effect would be to alter and vary the written contract. Fraudulent misrepresentations as to a material fact, made by one party to a written contract, for the purpose of inducing the other party to enter into it, may be proved by parol. *Janes* v. *Mercer*,

*University*, 17 *Ga.* 515; *Ham* v. *Parkerson*, 68 *Ga.* 831; *Barrie* v. *Miller*, 104 *Ga.* 312.

5. Under repeated rulings of this court, it was erroneous to allow one of the defendants, while testifying as a witness, to give to the jury his opinion as to the amount of damages which he and his codefendants had sustained in consequence of the alleged fraudulent representations of the plaintiff. *Woodward* v. *Yates*, 38 *Ga.* 205; *Brunswick R. Co.* v. *McLaren*, 47 *Ga.* 547; *Central Railroad Co.* v. *Kelly*, 58 *Ga.* 107; *Smith* v. *Eubanks*, 72 *Ga.* 280; *Central Railroad Co.* v. *Senn*, 73 *Ga.* 705; *Foote & Davies Co.* v. *Malony*, 115 *Ga.* 985.

6. Error was also assigned, in the motion for a new trial, upon the admission of a quoted portion of the testimony of one of the defendants, which was objected to as being hearsay, irrelevant, and relating to matters which could not affect the parties to the contract involved in the case. This testimony was not hearsay; and as some of it, under the amended answer of the defendants and in connection with other testimony introduced by them, was not irrelevant, and it was objected to as a whole, we find no error in overruling the objection offered to its admission.

7. In the motion for a new trial complaint was made of certain instructions which the court gave to the jury for their guidance (in the event they found that the plaintiff had made the alleged false and fraudulent representations to the defendants) in estimating the damages which the defendants had sustained. Without taking up the grounds of the motion complaining of these instructions and passing upon them, as the case is to be tried again, we will simply lay down what we think is the true measure of damages in such a case. If the defendants were induced, by false and fraudulent representations on the part of the plaintiff, to purchase the insurance-agency business, and the value of the business was materially less than it would have been if the representations of the plaintiff had been true, then the measure of the damages sustained by the defendants would be the difference between what would have been the value of the business if it had been as the plaintiff represented it to be and its value as it actually was. This rule is in accordance with the principle recognized by this court in *Millirons* v. *Dillon*, 100 *Ga.* 656, in which it was held, that, where one was induced to purchase property by

means of a false and fraudulent representation by the seller that the thing sold had certain qualities, the measure of damages, in an action for the fraud and deceit thus practiced by the seller, would be the difference between the value of the thing sold at the time of delivery and what would have been its value if the representation made by the seller had been true. While it may not have been necessary to lay down the rule as to the measure of damages in such a case, in order to decide the precise questions then before the court, the fact that it was laid down shows what this court, as then constituted, considered to be the correct rule in cases of this character. An analogous ruling was made in *Berry v. Shannon*, 98 *Ga.* 459, in which it was held, that, "Where an animal which could be of no use or value except for a particular purpose was bought upon a warranty by the seller that it was serviceable for that purpose, and at the time of the sale it was in fact either partially or totally worthless in that regard, the buyer, in an action against him for the price, was entitled to an abatement of the purchase-money, equal to the difference between the agreed price and the actual value, as reduced by the defective quality of the animal;" and that "this is true whether, in disposing of the animal to a third person, the buyer lost anything or not."

The courts of this country are in conflict as to the rule for measuring the damages in a case between a defrauded purchaser and a defrauding vendor, the majority holding the rule to be as we have above announced, while the minority, including the Supreme Court of the United States, hold that the difference between the real value and the amount which the purchaser was induced to pay measures the damages. In a standard work on damages it is said the party guilty of the fraud "is to make good his representations as though he had given a warranty to that effect. He is to make compensation for the difference between the real state of the case and what it was represented to be. Thus, in case of sales where there is a fraudulently false representation of quantity, quality, or title, the measure of damages is the difference in value between that which is actual and that which was represented to exist." 4 Suth. Dam. (3d ed.) § 1171. In the same work the following comment is made upon the general rule upon the subject which prevails in the Federal and some of the State

courts: "The general rule above stated is based on the assumption that the amount paid is the measure of the value as fixed by the parties; but a purchaser does not buy to sell again at the same price; and to compel him arbitrarily to accept compensation by that standard is to deprive him of such benefit of his purchase as the state of the market would have enabled him to realize if there had been no fraud. As said by Mr. Justice Gray [in Morse *v.* Hutchins, 102 Mass. 440], 'to allow the plaintiff only the difference between the real value of the property and the price which he was induced to pay for it would be to make any advantage lawfully secured to the innocent purchaser in the original bargain inure to the wrong-doer; and, in proportion as the original price was low, would afford a protection to the party who had broken, at the expense of the party who was ready to abide by the terms of the contract.' The amount paid is evidence of the value, but, on principle and according to the general course of decision, it is not conclusive of the value as it was represented to be." Ib. § 1172, p. 3410.

*Judgment reversed.　　All the Justices concur.*