## CARTER *et al. v.* CARTER ELECTRIC COMPANY; *et vice versa.*

1. The only question in this case is whether the petitioners for incorporation shall be permitted to incorporate under the name of W. B. Carter Electric Company, W. B. Carter being one of the incorporators, because there has already been chartered a corporation known as Carter Electric Company, likewise engaged in the business of furnishing and installing electrical supplies.

(a) In the absence of contract, fraud, or estoppel, every man has the right to use his own name in any legitimate way, either as the whole or as a part of the corporate name.

(b) An ordinary family name such as Carter cannot be exclusively appropriated by any one as against others having the right to use it; and in an action to restrain the use of the name in trade or business, where it appears that the defendant has the right to use the name, and has not done anything to promote confusion in the minds of the public except to use it, the complaining petitioner's case must stand or fall on his right, by contract, fraud, or estoppel, to the exclusive right to the use of the name.

2. Every man has the right to use his own name reasonably and honestly in every way whether in a firm or corporation, nor is a person obliged to abandon the use of his name or to unreasonably restrict it; and where persons or corporations have a right to use a name, the courts will not interfere where the confusion results only from a similarity of the names and not from the manner of the use. It is not the use but dishonesty in the use that is condemned. The essence of the wrong in unfair competition consists in the sale of the goods of one person as those of another person; and it is a question of evidence in each case whether there is a false representation or not; and if the defendant is not attempting to palm off his goods as those of a competitior, the action fails.

3. It not being alleged that the defendants who are petitioning for a charter in which the name of one of the petitioners is used to designate the corporation are using the name "Carter" dishonestly, or that the petitioners are resorting to unfair methods, or that they have wrongfully encroached on another's rights or are committing a fraud on the public, and there being no evidence introduced upon the interlocutory hearing showing either of these facts, the court erred

in granting a temporary injunction; "for as a rule a surname may not became a trade-mark." Zagier *v.* Zagier, 167 N. C. 616 (83 S. E. 913).

Nos. 3513, 3514. SEPTEMBER 7, 1923.

Injunction.    Before Judge Bryan.    Fulton superior court. September 7, 1923.

*Davis & Grant,* for plaintiffs in error.

*William A. Fuller,* contra.

RUSSELL, C. J.    Carter Electric Company, a corporation, filed an equitable petition asking that W. B. Carter and S. E. Carter be temporarily and permanently enjoined from prosecuting an application to obtain a charter under the name of W. B. Carter Electric Company, and from organizing and doing business under that name, and from infringing upon the name of petitioner; alleging that the use of the proposed name would deceive the public as to the identity of the proposed corporation, and would, by reason of similarity of names, mislead and deceive the general public, especially those in the habit of dealing with petitioner, when as a matter of fact they would be dealing with said proposed corporation.    The petitioner further alleged that in this way, its business patronage and good will would be taken away from it by said proposed corporation, and that the damages which the petitioner would incur cannot be calculated, and said damage would be irreparable.    No acts of unfair competition were complained of, and the petitioner did not ask that the defendant be enjoined from doing anything except using the name of W. B. Carter Electric Company.    The petition does not allege that the defendant has resorted to any artifice, or any act of fraud or deception, and does not allege that any misrepresentation has been made.    The only act complained of by the petitioner is that the defendants are preparing to organize a corporation under the name of W. B. Carter Electric Company, and to conduct a general electrical business, which is the same business that petitioner is engaged in.    It is not alleged that the defendants, now plaintiffs in error, are new in the electrical business.    The court granted an interlocutory injunction as follows: "The application for interlocutory injunction coming on for hearing, after hearing evidence and argument of counsel, it is considered, ordered, and adjudged that the defendants be and they are hereby enjoined from prosecuting their petition for a charter for W. B. Carter Electric Company, and

from organizing and doing business under said name, until the verdict of a jury upon final trial. Let the plaintiff give bond within two days, payable to the defendants, and approved by the clerk of this court, in the sum of $2000.00, conditioned for the payment to the defendants of such damages as they may sustain, in the event the plaintiff fails to secure the injunction and relief prayed for." To this judgment and order the defendants, W. B. Carter and S. E. Carter, excepted, assigning error thereon upon the ground that the same was contrary to law and equity, and contrary to the evidence, and without evidence to support it.

The evidence offered by the petitioner consisted of an affidavit of L. L. Shivers, president of the plaintiff corporation, an affidavit of Frank S. McGaughey, vice-president of plaintiff corporation, and the petition and order granting to the plaintiff a charter and an amendment thereto. The defendants offered no evidence. They insist that they are honestly and fairly using their own name in their own business, and that they have the right to so use their own name, and that the plaintiff (defendant in error) has no monopoly upon the name " Carter " and no exclusive right to the electrical business.

The question now before this court is a matter of very frequent adjudication, and various phases of the question have been passed upon. As appears from the foregoing statement of facts, Carter Electric Company, a corporation engaged in the business of dealing in electrical supplies and electrical construction, a duly chartered corporation which has been engaged in business for many years in the City of Atlanta, and which succeeded from a small beginning in creating a business amounting to more than one million dollars a year, filed the petition in this case to enjoin W. B. Carter and S. E. Carter from obtaining a charter to do a similar business under the name and style of W. B. Carter Electric Company. The trial judge granted a temporary restraining order, and later an interlocutory injunction forbidding W. B. Carter and S. E. Carter from prosecuting their application for incorporation until a jury could pass upon the facts. Upon the interlocutory hearing the only evidence introduced by the petitioner was to the effect that the corporation, Carter Electric Company, which had originally done business as the W. E. Carter Electric Company, had conducted " an active business in buying, selling, and dealing

in electrical equipment, supplies, apparatus, etc., doing the business usually conducted by a wholesale and retail electric company, this business extending over several States and employing over forty persons; that it has a large amount of capital invested in its business; that the gross annual business is in excess of one million dollars; that it is thoroughly established and is well known not only in its community but throughout the Southern States, both under the name under which it was organized and conducted the business, to wit, W. E. Carter Electric Company, and the name under which it has been doing business since 1915 of Carter Electric Company; that a large part of its trade was built up when it was conducted under the name of W. E. Carter Electric Company, and that it is still known to many people under that name, notwithstanding the change in its name by amendment to its charter."

There is no allegation in the petition for injunction that the defendants W. B. Carter and S. E. Carter or either of them have done any act or intended to do any act which of itself would wrongfully interfere with the petitioner's business. Nor is there any allegation that the petitioners for incorporation intend to sell their goods as goods manufactured by or handled by the petitioner, Carter Electric Company. For this reason the questions presented by the record are reduced to these: First: Can the defendants who are named Carter use their own name or the name of either of them in conducting their own business under their own name, because it appears to be the same business in which a corporation which uses the same surname is now and has for many years been engaged? Second: Are the names so similar as to be identical? Third: Conceding that an individual may use his own name for any legitimate purpose which may be of profit to him, does such use extend to corporations? Or, to put the question more closely to the facts in the record, does the right of the use of his individual name go to such an extent that he may use his individual name for the purpose of designating a corporation in which he is interested, regardless of the fact that a part of the corporate name which he seeks to use has already been subjected to a prior use by another corporation engaged in the same business?

1. It seems to have been long settled that an individual is entitled to the use of his own name in any business in which he may

wish to engage.  In the case of Burgess v. Burgess, 3 DeGex, Mc-Naghten & Gordon, 896, 43 English Reports (Chancery Book 23), p. 351, Lord Justice Bruce said: " All the Queen's subjects have a right, if they will, to manufacture and sell pickles and sauces, and not the less that their fathers have done so before them.  All the Queen's subjects have a right to sell these articles in their own names, and not the less so that they bear the same names as their fathers: nor is there anything else that this defendant has done in question before us.  He follows the same trade as that his father follows, and has long followed, namely that of manufacturer and seller of pickles, preserves, and sauces; among them one called ' Essence of Anchovies.'    He carries on business under his own name, and sells his essence of anchovies as ' Burgess's Essence of Anchovies,' which in truth it is.  If any circumstances of fraud, now material, had accompanied, and were continuing to accompany the case, it would stand very differently; but the whole case lies in what I have stated.  The whole ground of complaint is the great similarity to the name, which, during many years, has been possessed by the elder Mr. Burgess's Essence of Anchovies.  That does not give him such an exclusive right, such a monopoly, such a privilege, as to prevent any man from making essence of anchovies, and selling it under his own name.  Without therefore questioning any one of the authorities cited, all of which I assume to have been correctly decided, I think that there is here no case for an injunction."  And the headnote of the Burgess case is that where a person is selling an article in his own name, fraud must be shown to constitute a case for restraining him from so doing on the ground that the name is one in which another has long been selling a similar article.

In the case of Turton v. Turton, L. R. 42 Ch. Div. 128, decided in 1889, in dealing with the case of Turton v. Turton, in which the plaintiffs did business under the name of Thomas Turton & Son, but were generally known as Turton & Sons, and John Turton, who had taken his sons in business with him, was sought to be restrained because of the similarity of surnames, the one business being known as Thomas Turton & Sons and the other as John Turton & Sons, Lord Esher said: " Now it is not alleged — certainly it is not proved against him — that he did anything in the way of his trade which tended to give any other meaning to the name

in which he carried on his business, or which could give any other meaning to it, than merely the fact that he did carry on business, and was in partnership with his sons. He had not done anything with the intent or for the purpose of making the use of his simple name look as if it were the name of the plaintiffs. In some cases, besides using the name, parties have, to use what I think is a happy phrase of my Brother Cotton's, garnished that use — that is, they have done things besides using the name, in order that the use of the name might look as if it were being used by the old firm. There is nothing of that kind here. The defendants have carried on a business, a great part of which is the same as the plaintiff's, but they have carried it on as John Turton & Sons, the name of the principal being John Turton, and it being true that he has taken his sons in as partners — he has done nothing but that. This is all he proposed to do, and, as has been pointed out by Mr. Rigby, although at one time there seems to have been an allegation that he was doing something more than that in order to make people believe that the manufactory was the manufactory of the plaintiff's, that allegation is withdrawn, and therefore it is clear that there is no charge that he has done anything but simply use it as his business name, and simply carried on his business with a statement that he is carrying on his business himself as John Turton and with his sons as partners, which is the accurate and exact truth.

"Therefore the first question of law in the case is this: Supposing that, and that only, is done by the defendant, but nevertheless some people, or, if you please, many people, in the market do from time to time give orders intending them for the plaintiff's firm, which on account of the similarity in names go to the defendant's firm, are the plaintiffs entitled to an injunction? If there had been anything more than the mere use of the name, by the defendant in the way I have stated, that there might have been a necessity for an injunction, I think, cannot be denied. Here are two firms, Thomas Turton & Sons, and John Turton & Sons. Well, careless people may not notice the difference of christian names and may look more to the words 'Turton & Sons' which are the same in both. That might be so. Therefore, for this purpose, I assume that the names are sufficiently alike to cause those blunders in trade; but they are blunders of the people who make

the blunders. Has the defendant done anything to so far cause those blunders, even though he did not intend it, which entitles the court to stop him from doing what he is doing? He is simply stating that he is carrying on business with his two sons as partners. I say that is the accurate and exact truth of what he is doing. I will assume for the moment that it is pointed out to him that, he doing that, blunders will occur in the business and that the results which are complained of will happen. Is there anything dishonest — is there anything wrong morally, in any, even in the strictest sense, in a man using his own name, or stating that he is carrying on business exactly as he is carrying it on? Is there anything wrong in his continuing to do so, because people make blunders, and even, if you please, because they make probable blunders? What is there wrong in what he is doing?

" Now it is said that the plaintiffs have a trade name and a property in their name. I doubt about the property, though they have this right: that no man shall wrongfully interfere with their name. But they have no right to say that a man may not rightfully use his own name. I cannot conceive that the law is such. If the law was such, the law would be most extraordinary and, to my mind, most unjust — to prevent a man using his own name; and I must say this: that all the arguments that have been used in this case would have been equally applicable if there had nothing been said about sons, and if one man were carrying on business as Thomas Turton under the circumstances in which Thomas Turton & Sons were carrying on their business, and another man named John Turton were to come and carry on his own business simply in his own name. Therefore the proposition goes to this length: that if one man is in business and has so carried on his business that his name has become a value in the market, another man must not use his own name. If that other man comes and carries on business, he must discard his own name and take a false name. The proposition seems to me so monstrous, that the statement of it carries its own refutation. Therefore, upon principle, I should say it is perfectly clear that if all that a man does is to carry on the same business, and to state how he is carrying it on — that statement being the simple truth, and he does nothing more with regard to the respective names, he is doing no wrong. He is doing what he has an absolute right by the law of England

to do, and you cannot restrain a man from doing that which he has an absolute right by the law of England to do."

The Supreme Court of the United States has in many cases recognized and stated the law to be that where the only confusion in the minds of the public results from the similarity in names, injunction will not be granted. That court holds that there must be something beyond the mere similarity in names. In the case of Howe Scale Co. *v.* Wycoff, 198 U. S. 118 (25 Sup. Ct. 609, 49 L. ed. 972), Mr. Chief Justice Fuller, delivering the opinion of the court, it was held that " Every man has a right to use his name reasonably and honestly in every way, whether in a firm or corporation; nor is a person obliged to abandon the use of his name or to unreasonably restrict it. It is not the use, but dishonesty in the use, of the name that is condemned. . . One corporation cannot restrain another from using in its corporate title a name to which others have a common right. Where persons or corporations have a right to use a name, courts will not interfere where the only confusion results from a similarity of names and not from the manner of the use. The essence of the wrong in unfair competition consists in the sale of the goods of one person for that of another; and if defendant is not attempting to palm off its goods as those of complainant, the action fails. . . But it is well settled that a personal name cannot be exclusively appropriated by any one as against others having a right to use it; and as the name ' Remington ' is an ordinary family surname, it was manifestly incapable of exclusive appropriation as a valid trade-mark, and its registration as such could not in itself give it validity. Brown Chemical Company *v.* Meyer, 139 U. S. 540; Singer Manufacturing Company *v.* June Manufacturing Company, 163 U. S. 169; Elgin National Watch Company *v.* Illinois Watch Case Company, 179 U. S. 665. " The general rule and the restrictions upon it are thus stated in Brown Chemical Company *v.* Meyer. There plaintiff had adopted as a trade-mark for its medicine the words ' Brown's Iron Bitters,' and the defendants used upon their medicine the words ' Brown's Iron Tonic.' This court, after commenting upon the descriptive character of the words ' Iron Tonic,' and confirming the defendants' right to the use of these, said: ' It is hardly necessary to say that an ordinary surname cannot be appropriated as a trade-mark by any

one person as against others of the same name, who are using it for a legitimate purpose; although cases are not wanting of injunctions to restrain the use even of one's own name where a fraud upon another is manifestly intended, or where he has assigned or parted with his right to use it.' And, after citing numerous authorities, Mr. Justice Brown, delivering the opinion, continued: ' These cases obviously apply only where the defendant adds to his own name imitation of the plaintiff's labels, boxes, or packages, and thereby induces the public to believe that his goods are those of the plaintiff. A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any oher species of property. If such use be a reasonable, honest, and fair exercise of such right, he is no more liable for the incidental damage he may do a rival in trade than he would be for an injury to his neighbor's property by the smoke issuing from his chimney, or for the fall of his neighbor's house by reason of necessary excavations upon his own lands. These and similar instances are cases of damnum absque injuria.'

" In Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, the rule is thus laid down by Mr. Justice White: ' Although " every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name, in such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria." But although he may thus use his name he cannot resort to any artifice, or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of names.' "

The defendants in error filed a cross-bill of exceptions, assigning error upon the order of the court ruling out portions of the evidence of Frank S. McGaughey and L. S. Shivers. The evidence of both witnesses was substantially the same and as follows: " Deponent further believes that the use of the name W. B. Carter Electric Company is calculated to deceive the public as to the identity of the proposed company, and would mislead and deceive the general public, especially those in the habit of dealing with the W. E. Carter Electric Company and the Carter Electric Com-

pany, and lead them to believe that they were doing business with the Carter Electric Company, when as a matter of fact they would be dealing with said W. B. Carter Electric Company. Deponent further believes that if the company to be known as the W. B. Carter Electric Company is organized, it will cause endless confusion, and take away the good will and business of deponent's company, and that the damage which would be done to Carter Electric Company can not be calculated, and would be irreparable." We think that this evidence was properly excluded by the court, upon the objection based on the ground that the same was an expression of an opinion and a mere conclusion. It is insisted by counsel for plaintiff in error that these witnesses were familiar with the details and development of the business of Carter Electric Company, and by reason of their knowledge and experience in the business they were probably in a better position than any other person whomsoever to testify as to the probable effects which the organization of a competing company would have upon the business of the corporation, and to testify as to the deception to the public and confusion in their own business which would result. This statement and view of the matter is probably true, but it can not affect the legal principle upon which was based the objection which was sustained by the court. These witnesses can not be classified as experts within the purview of § 5876 of the Civil Code of 1910, as to the testimony sought to be elicited, because the scope of the testimony extended to matters of "science skill, trade, or like questions," but the testimony was confined to the opinion of the witnesses as to one specified and named business, to wit, an opinion as to that business not detailed. We think that the ruling of the trial judge was properly controlled by § 5874 of the Civil Code of 1910, which declares that "Where the question under examination, and to be decided by the jury, is one of opinion, any witness may swear to his opinion and belief, giving his reasons therefor; but if the issue *is as to the existence of a fact,* the opinions of witness, generally, are inadmissible." The issue presented to the court in this case is as to the existence of facts, and for that reason we think that the lower court properly held that the mere opinionative statements of the witnesses were inadmissible. The probable injury could only be measured by damages; and it has been frequently held that it is error to allow the

opinion of witnesses as to the amount of damages, it being the province of the witness merely to state the facts, and the province of the jury to reach conclusions. *Welch* v. *Stipe,* 95 *Ga.* 762 (22 S. E. 670) ; *Foote & Davies Co.* v. *Malony,* 115 *Ga.* 985 (42 S. E. 413) ; *McCrary* v. *Pritchard,* 119 *Ga.* 876 (47 S. E. 341). As said by Judge Atkinson in *Welch* v. *Stipe,* supra, " A bare opinion of a non-expert witness, without detailing the circumstances and facts upon which it is predicated, if permitted to go to the jury, would amount virtually to a substitution of the opinion of the witness for the opinion of the jury; and it is the mental conclusions of the latter, and not of the former, which are invoked by courts to assist them in arriving at correct conclusions with respect to matters of fact which they are called upon to consider. Before the opinion of a non-expert witness can be considered, it must appear not only that the witness had the opportunity of learning the facts upon which the opinion is predicated, but it must appear that the opinion was in fact based upon the facts and circumstances so ascertained, and not upon bare conjecture; and, in addition to this, it must appear that the witness, in the expression of the opinion, speaks with reference to the facts upon which it is predicated. Hence, whatever opinion a non-expert witness might be willing to express, such opinion can not be received unless it appears that it is based upon some knowledge of the matter out of which the mental conclusion of the witness arose, and that in the deliverance of the opinion he speaks with reference to such knowledge as the basis of its formation."

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*