## RUSSELL v. SMITH BROTHERS.

*Lumpkin, J.*—1. Where one voluntarily and without considera-
tion gave his draft in payment of the debt of another, for
which the drawer was in no way bound or responsible, there
being upon the paper upon which the draft was written a re-
ceipt signed by the payee acknowledging payment in full of
the debt in satisfaction of which the draft was given, but it
being understood between the parties that this receipt was not
to become effective until the draft was actually paid; and
where shortly after such draft was delivered and before it was
presented for payment or anything to the injury of the payee
had occurred, the latter was informed by the drawer that he
would not be bound by the draft but would order payment of
the same stopped, the drawer was not liable for its payment.
The contract embodied in the draft, being entirely without con-
sideration, was a mere *nudum pactum.*

2. On the other hand, if in such case the creditor, in consideration
of the giving of the draft, executed a binding receipt discharg-
ing his debtor, or, because of the giving of the draft, was pre-
vented from collecting his debt, or otherwise injured in that
respect, the drawer was liable.

3. The evidence being directly conflicting as to the real truth of
the matter, the court erred in directing a verdict for the plain-
tiffs, but instead of so doing should have submitted the case
to the jury for their determination.　　　*Judgment reversed.*

August 12, 1895.

Action on draft.　Before Judge Bower.　Decatur
superior court.　November term, 1894.

Smith Brothers sued Russell upon a draft for $102.58,
drawn upon a bank, signed by Russell.　Written above the
draft on the same piece of paper, and bearing the same
date, was a receipt from Smith Brothers to Russell for
$102.58 "in payment of account of A. F. Prevatt & Co."
The court directed a verdict for the plaintiffs, and Russell
excepted.　He testified as follows: Burkett managed a
business in this town (Bainbridge) for his wife under the
name of Prevatt & Co.　He and I went to Thomasville on
some business.　During the ride, in general conversation,
not speaking of plaintiffs or any claim or demand they had,
I understood him to say that, so far as this business here

was concerned, this business of Prevatt & Co., they were
ready to pay their debts, or something of that sort. I
thought no more about it until I got to Thomasville, and
while waiting for dinner I met Henry Smith of Smith
Brothers, and he spoke about a claim he had against them,
and I told him Burkett said they were all right and would
pay what they owed over here; and after some conversation
he asked if I would give him a check for it, and I told him
I would. No one but Smith and I was present at that
time; and I gave that draft. I am not certain exactly what
time that receipt was given, and cannot give any statement
about that; if I ever saw it before, I have no recollection of
it, but will not state it was not there; the receipt is still in
their possession. I had no instructions from Burkett, who
was agent for his wife, no instructions from her, nor any
party interested, nor agreement, nor contract in any way,
shape or form, looking to taking up that debt; it was a
voluntary debt, and immediately after giving it I walked
into the dining-room at the hotel and there found Burkett
at the table, or he came in inside of three minutes. I told
him what I had done, and he said, "I am sorry you done
that. I am not going to pay it, for I am wound up here."
I swallowed a hasty dinner, hunted for Smith and found
that he had gone to the depot. I asked Burkett to go with
me, and he did so. We went to the depot, and I told
Smith I could not pay the check; that Burkett had in-
formed me he would not pay it, and I did not feel like
throwing that much money away. This was inside of
thirty minutes after I gave Smith the check; and I put him
on notice that I would not pay it, so that no harm could
come to him. I gave instructions not to pay the check.
I have received no consideration whatever for the draft; it
was a pre-existing debt he claimed against Prevatt, or Mrs.
Burkett doing business in that name; it did not look to my
credit to be extended to her; they have never transferred
me any account nor itemized statement, nor evidence of in-

debtedness whatever. I was representing Prevatt & Co. in some business, but not connected with Smith. That receipt and draft I now remember were written contemporaneously, because the receipt was to be good and valid whenever the draft was paid; if the bank took up the draft, the receipt would be binding; but before he could possibly get to the bank and get the money, it was countermanded in the presence of Burkett, who declined in Smith's presence to have anything to do with the transaction. That receipt was not delivered to me, but he retained it, and if the bank took up the draft it got the receipt too.

Henry Smith testified: That receipt was written by request of Russell; he said he wanted to pay the account of Prevatt & Co., and to write out the receipt and he would give me the check; he showed me his bank book, where he had nearly one thousand dollars in the bank. I never looked to Prevatt & Co. for that account after that. I went to Thomasville on telegraphic advices from my house to see Capt. Hammond for the purpose of protecting ourselves in this matter, and I saw Russell.

D. A. Russell, by Glenn & Rountree, for plaintiff in error. Donalson & Hawes, contra.