## 1516.　BARCO v. TAYLOR.

1. While parol evidence is not admissible to vary the terms of a written contract or to substitute a different contract from that evidenced in writing, parol evidence is admissible to show that by reason of fraud no contract really exists. Evidence that one who signed a note (apparently either as joint principal or as surety) signed merely as a witness is admissible, where it appears that such signature was obtained by fraud and artifice.

2. A plaintiff who must himself by parol show that one who signed a note is a surety can not complain that by parol evidence it is shown that the signer affixed his name neither as principal nor as surety, but only as a witness.

3. When it has been shown that two parties have agreed upon a contrivance by which another is to be defrauded, and this agreement has been denied, circumstances tending to corroborate the existence of the agreement are admissible.

4. After having instructed the jury that they must determine whether any fraudulent statements are made, and further whether such statements influenced another, it is not error to instruct them that in case they find that the statements were both made and acted upon, a certain result would follow as a matter of law. This does not constitute an expression of opinion upon the evidence.

5. The general rule that one who can read will not be allowed to set up that he was defrauded into signing an instrument which he had an opportunity of reading does not prevent the defense of fraud where one able to read was, under peculiar circumstances, induced, by trick òr contrivance, to sign an instrument in one capacity, being informed and believing that he was signing in another capacity.

6. Testimony as to the general good character of a witness is irrelevant and immaterial in advance of an attack upon his credibility, or where no effort has been made to impeach him; but it is not reversible error to allow such testimony where no objection is offered thereto upon the trial.

Complaint, from city court of Bainbridge—Judge Harrell. October 29, 1908.

Submitted December 15,—Decided December 22, 1908.

Barco sued White as principal and Taylor as surety, upon a promissory note for $450. The note was signed by J. W. White, and underneath his name was that of the defendant Taylor. No service was had as to White, but service was perfected on Taylor. Taylor filed a plea in which he denied signing the note either as principal or joint principal or as surety, and alleged that he signed solely as a witness to the signature of White; also that he was induced by fraud to sign the note, which fraud was participated in

by both White and the plaintiff. Upon the trial there was testimony from both White and Taylor, showing that Taylor was only asked to sign the note as a witness, and signed with no other intention, and that his signature to the note was obtained by a fraudulent device which had been suggested by the plaintiff. It seems that Barco wanted to sell White a pair of horses and a surrey, and told him that he would let him have them if White would give his note and get a good party to go on the note with him. White signed the note in question at that time, and went around for about two weeks, and brought the note back to Barco, and told him that he could not get any one to go on his note. Barco then suggested to White that he might get Taylor to go on the note, and Barco told White to fool Taylor and make him think he was signing the note as a witness, instead of as security. In accordance with this agreement, White went out to Taylor's house, about ten miles in the country, and found him at a new house he was building, and told Taylor that he wanted him to sign the note as a witness to his signature, which Taylor did, while White held his hand over the place intended for witnesses to sign. White further testified that he asked Taylor to sign the note as a witness and told him to sign it below his (White's) name, and not as a surety, and that the plan was gotten up by Barco, and that Barco knew that the signature of Taylor was obtained by this fraud. The jury returned a verdict in favor of the defendant. The plaintiff's motion for new trial was overruled, and exception is taken to this judgment.

*W. H. Krauss, E. S. Longley,* for plaintiff.

*J. H. Gilpin, R. G. Hartsfield,* contra.

RUSSELL, J. (After stating the foregoing facts.)

1. We find no error in the judgment of the lower court. It is insisted by counsel for plaintiff in error that the parol testimony as to the circumstances under which Taylor signed the note in question tended to vary the terms of the written contract, and that the admission of this testimony is clearly error, under the decision of this court in *Branan* v. *Warfield,* 3 *Ga. App.* 586 (60 S. E. 325). The decision in *Hollingshead* v. *American National Bank,* 104 *Ga.* 250 (30 S. E. 728), is also relied upon to sustain this contention. As we view it, there is a wide difference between a plea which seeks by parol to *vary* the terms of a written contract, and a plea which denies, in effect, that the party ever entered into the contract. In

the case now before us the plea is denominated by the defendant in error as a plea of non est factum, and while it is, in one sense, a plea of non est factum, the allegations are also sufficiently specific to entitle it to be classed as a plea setting up such fraud in procurement of the instrument in question as to render it a nullity as to the defendant. It is as much a provision of the code that fraud avoids all contracts as that parol evidence is inadmissible to vary the terms of a written contract. In all of the cases cited by counsel for the plaintiff in error it appears that there was in fact a contract of some kind between the plaintiff and the defendant. There was an agreement by which the defendant admitted that he had assumed an obligation to the plaintiff, though perhaps the obligation was not correctly set forth. There was in each case some affinity between the subject-matter of the contract that the defendant actually signed and the contract he intended to sign. But in the present instance the signer was not asked to assume any obligation or to enter into any agreement to do anything, nor was it necessary even that he should know what the contract really was. He was asked merely to witness a signature, and, according to the testimony, this trick by which his signature was obtained was the mutual device of the two parties to the note which had actually been originated by the plaintiff. In the *Warfield* case, Branan knew that he was signing a note; he knew that under that note he was agreeing to bind himself for the payment of a certain sum of money; he knew he was dealing with the opposite party to the contract; and we held that, under the allegations of his plea, the law would not protect him from gross negligence in not reading the terms of the obligation he was assuming. He knew he was giving Warfield & Lee a note. In the present case Taylor had had no dealings whatever with Barco. He was told that his signature was wanted only as a witness, and there being no contractual relation between him and either of the parties which required him to be upon his guard, he was defrauded by the false statement of the signer of the note, who asked him merely to witness his signature. In the *Hollingshead* case the security who sought to be relieved agreed to indorse one $2,000 note, and, under the impression that he was indorsing that note, indorsed another and a different note for $2,000; and the court properly held that as no representations were made to him as to the contents of the note, and as the failure

to read the same was manifestly the result of his own laches, he was not entitled to any relief.

In the numerous cases in which it has been decided that neither law nor equity will relieve one who signs a written obligation from the effects of his own gross negligence in not determining in advance the nature of the obligation he signs, the signer knew that he was signing something which imposed liability upon him. This. fact is sufficient to put him upon notice. But a witness assumes no liability upon a note which he signs as such; and, therefore, parol evidence is admissible, not to vary the terms of a written contract, but to show, as a matter of fact, that the signer never entered into the contract. Parol evidence is always admissible to show fraud in the procurement of a written instrument, and is no less admissible to show that by reason of fraud no contract was created. While it was held in the *Branan* case (p. 587) that "it is fundamental that an entirely different. contract from that evidenced by the writing can not be pleaded or proved. by parol as a substitute for that embodied in the writing," it was also held that "parol evidence is admissible to explain an ambiguity and to show the true consideration of a contract to be different from that stated therein." The note in the present instance contained an ambiguity, because, in the body of the instrument, only one person promised to pay; and the plaintiff's very case depended upon showing that Taylor, by signing his name, became a surety. In this state of the case, if Taylor could show what the true consideration was, he could likewise show that there was no consideration. We also held in the *Branan* case that "where fraud, in the execution of an instrument, is *properly alleged,* the way is paved for the admission of parol testimony." In the present case, as we have above stated, we think a fraud is properly alleged. And as held in *Jossey* v. *Georgia Southern Ry. Co.,* 109 *Ga.* 446 (34 S. E. 667),. which is cited in the *Branan* case, while "one who executes and delivers a promissory note without reading or knowing its contents. can not avoid liability thereon because he acted ignorantly, without showing some justification of his ignorance, either by his inability to read or by some misleading device or contrivance amounting to fraud on the part of the person with whom he was dealing," still we think the court and jury properly held that the false statement, that Taylor was to sign only as a witness, was just such a mislead-

ing device and contrivance as amounted to fraud. This was not a case of different consideration from what a contracting party supposed, but a case of no consideration to a party who was not contracting but was being imposed upon. The judge very properly admitted the evidence; and if this evidence is true, as the jury had the right to find, the jury very properly relieved this defendant.

2. Further objection to the parol evidence is that it was incompetent because the defendant as a surety can not manufacture and introduce evidence himself so as to keep him from liability on the note in question. The defect in this exception is that it assumes that the defendant Taylor had been shown to be a surety, and that is the very point in issue. It can not be determined from the note itself that Taylor is a surety, rather than a joint maker.

3. The evidence as to the inferior quality of the horses sold by Barco, we think, was properly admitted, in illustration of the fraud sought to be perpetuated upon Taylor by Barco and White jointly. A surety has the right of subrogation against his principal; and the less valuable the assets of that principal, the less likely, generally, one is to assume the obligation of suretyship. Furthermore, the worthlessness of the horses, if indeed they were worthless, tended to corroborate the testimony that the fraud originated with Barco.

4, 5. Exception is taken to the instruction of the court in which the jury were charged, "if you believe that the signature of Eli Taylor was obtained to the note in question by fraudulent statements or fraud of the other defendant, White, and which fraudulent statements were made to Taylor by White, but which had been suggested by the plaintiff, Barco, and if you further believe that by reason of said fraudulent statements the said Taylor was induced to sign the note in question apparently as surety, when he only intended to sign the same as a witness and believed he was signing the same as a witness only to White's signature, then I charge you that the plaintiff can not recover from the said Eli Taylor." The errors assigned upon this charge are, that the court did not explain the meaning of the words "fraud" and "fraudulent statements," and eliminated from the consideration of the jury the fact that Taylor could not have been defrauded into signing the note apparently as surety, so as to defeat plaintiff's suit on said note, when, being able to read and write, he could and

should have known how he was signing the note; and that the charge was an expression of opinion by the court on what the defendant had proved as to how Taylor was induced to sign the note. We shall consider these in reverse order. We fail to see any expression of opinion in the excerpt quoted. It is stated in the brief that the suggestion lies in the language, "by reason of said fraudulent statements," in that the court assumes therein that the alleged fraudulent statements have been proved. Assuming, as we must, that the jury were of ordinary intelligence, they could not forget that in the very preceding sentence it was submitted for them to determine whether any fraudulent statements had been made or any fraud committed; and when the court proceeded to say, "if you further believe that by reason of said fraudulent statements," this language was to be understood as referring to the statements as to which the jury were to determine whether or not they had been proved, the court then proceeding to state what would be the result not only in case they found that fraudulent statements were made in the first instance, but also if they found that these false statements were the sole cause of Taylor's signing. As to the second criticism upon the court's charge,—that it eliminated consideration of the fact that Taylor could read and write,—it need only be said that Taylor did not rely on illiteracy as a defense, but relied upon the other defense, referred to in the *Jossey* case, supra, that the fraud was the result of a trick, contrivance, or device. In so far as the court's omission to define the meaning of the words "fraud" and "fraudulent statement" is concerned, it may be that in some other portion of the charge these words were defined. We can not say that they were not, because it was not asked that the charge be sent up, and it is not before us. In the present case, however, even if these words were not defined, we think that their meaning is so obvious that the jury were not left in doubt.

6. Exception is also taken to the introduction of testimony as to the good character of the defendant Taylor; for the reason that no attack had been made upon his character, and the evidence was immaterial and illegal because unauthorized by the pleadings. It appears that this evidence was not objected to at the trial. While it is true that a witness whose veracity and credibility has not been attacked needs not the corroboration afforded by evidence of good character, and can safely rely upon the presumption that he is of

good character, still, where the opposite party sits quietly by and permits the testimony to be introduced without objection, the admission of such testimony affords no ground for new trial. According to the evidence, which the jury had the right to believe, White and Barco deliberately set about to get the signature of this old countryman as surety on a note, by asking him to do what almost any other man would do,—witness a signature. White found him at his work, engrossed in his own affairs and entirely ignorant of the proposed contract. He purposely holds his hand over that portion of the note where witnesses usually sign, and abuses his accommodating disposition by asking him to sign as a witness to his (White's) signature at a place on the note indicated by him. Barco had suggested the scheme and was fully cognizant that his fraudulent device had succeeded, when the note was put in his possession. It was such a palpable fraud as could be shown by parol, and such a fraud as, if proved, entitled Taylor to relief. He was not dealing at arm's length with the opposite party to a contract; he was entrapped by a device into signing a paper evidencing a contract with relation to which he had never been consulted. It is true that Barco denies all this; and if the jury had believed his testimony, he would have been entitled to a finding in his favor; but the jury preferred the testimony for the defendant, which amply supports their verdict.       *Judgment affirmed.*