1874. SAUL *et al.* v. SOUTHERN SEATING & CABINET
COMPANY.

When one person has sold and delivered goods to another, and the detriments and benefits which constituted the consideration of the contract between them have been suffered and received, and the transaction has thus become fixed as to the reciprocal liabilities, a contract by a third person, not originally bound, to pay the debt thus already pre-existing

and incurred by the purchaser, is nudum pactum, unless supported by some new consideration.

Complaint, from city court of Atlanta—Judge Reid.   April 1, 1909.

Argued June 24,—Decided November 9, 1909.

The Southern Seating & Cabinet Company brought suit against J. Saul and Nathan Wolfe on three promissory notes, all of the same tenor, except that one was due two months, one four months, and one six months after date.   It will be sufficient to copy the material parts of only one of them, viz.: "$250.00.   Atlanta, Ga., Aug. 13, 1907.   For value received, two months after date we promise to pay to the order of Southern Seating and Cabinet Co. two hundred and fifty dollars, without interest.   The consideration of this and other notes is the following described property: 705 No. 404 Body-116 No. 40 Ends 18 Donkey Division which we have received of said Southern Seating & Cabinet Co.   Nevertheless, it is understood and agreed by and between us and the said Southern Seating and Cabinet Co. that the title to the above-mentioned property does not pass to us, and that until all said notes are paid, the title to the aforesaid property shall remain in the said Southern Seating & Cabinet Co., who shall have the right, in case of non-payment at maturity of either of said notes, without process of law, to enter and retake, and may enter and retake immediate possession of the said property wherever it may be, and remove the same.   .   .   The drawer and endorsers agree to pay all reasonable attorney's fees for collecting the same.   J. Saul, pres., Nathan F. Wolfe, secy."

The defendants filed a plea as follows: "That at the time of signing said notes, J. Saul was the president of the Congregation of Beth Israel, and Nathan F. Wolfe was the secretary of said congregation.   Said congregation is a corporation organized under the laws of the State of Georgia, for religious and charitable purposes. That on May 21st, 1907, said Congregation of Beth Israel, through its purchasing committee, to wit, J. Saul and L. Eplan, entered into an agreement with the Southern Seating and Cabinet Company, of Jackson, Tenn., for the purchase of a lot of seats and benches to be used in the church building of said Congregation of Beth Israel. The purchase-price for said benches, agreed to be paid by said Congregation of Beth Israel, through its purchasing committee, was

the sum of $1,000, of which $250 was to be paid cash when the goods were placed in said church building; the balance of said payments were to be in three equal payments, to wit: in sixty days, four and six months, without interest. Said contract was in writing, and was executed between the Southern Seating and Cabinet Company, of the first part, and J. Saul and L. Eplan, purchasing committee of the Congregation of Beth Israel, of the second part. Said contract further provided that the Southern Seating and Cabinet Company should deliver and set up the benches purchased, and, upon their acceptance by the congregation, were to be paid for by the congregation as follows: $250 in cash, and the balance in three equal payments in sixty days, four and six months, without interest. That when said benches were shipped to Atlanta, and set up in the church building of said Congregation of Beth Israel, the representative of said plaintiff came to Atlanta with the contract and three certain notes, made out on forms provided by said plaintiff, and, claiming to have fully performed its part of the contract, called on said Congregation of Beth Israel for the cash payment, and for the three notes representing the deferred payment, in pursuance of and in accordance with the said contract; that said congregation thereupon made the cash payment and directed defendants, as president and secretary of said congregation, to sign the notes tendered by said plaintiff. That defendants, in accordance with the direction of said congregation, and at the request of said plaintiff, and as officers of said congregation, and in no other capacity, signed their names to the said notes—J. Saul as president, and Nathan F. Wolfe as secretary. That at the time said notes were so signed by defendants there was no promise on the part of defendants to become personally liable for the obligation of said congregation. There was no demand made on the defendants by said plaintiff that they should become personally liable, and said notes when signed by the defendants were accepted by said plaintiff as the obligation of said Congregation of Beth Israel. That there was no consideration moving to the defendants as individuals for signing said obligations, and that as to defendants as individuals said notes were wholly without consideration. Said notes were given in pursuance of a contract of sale, hereinabove referred to, and as a part of the undertaking agreed to be performed by said Congregation of Beth Israel. At the time said notes were

executed said benches had been delivered to said congregation and
had been accepted by said congregation, and the indebtedness on
the part of the congregation to said plaintiff was in existence.   Said
plaintiff did not do anything, or waive any rights, or grant any ad-
ditional extension or consideration to said Congregation of Beth
Israel as a basis for the signing of said notes.   That said benches
or church furniture, were not delivered to said J. Saul and said Na-
than F. Wolfe, but were delivered to the Congregation of Beth Israel,
and placed in the church building of said congregation, and in the
possession, custody, and control of said corporation.   That the said
J. Saul and Nathan F. Wolfe entered into no agreement to pur-
chase, nor did they enter into any agreement to stand as security
for the payment of said obligation.   That as to them as individuals
said notes are wholly without consideration, that they are past due,
and are in the possession and custody of the Southern Seating and
Cabinet Company to whom they were originally executed, and are,
therefore, null and void as to these defendants as individuals." The
court struck the plea, on general demurrer; and, a judgment having
been entered in the plaintiff's favor, the defendants except.

*Dorsey, Brewster, Howell & Heyman.* for plaintiffs in error.

*Slaton & Phillips,* contra.

POWELL, J.   (After stating the foregoing facts.)     Since the
notes are under seal, and since they do not on their faces disclose
any principal for whom the signers could be construed to be acting
as agents, they are to be taken as the individaul act and deed of
Saul and Wolfe, and the words "pres." and "secy." following their
respective names will be looked upon as mere descriptio personæ.
May we say, in passing, that the principle of construing as mere
descriptio personæ such words as "agent," "administrator," "presi-
dent," "secretary," "trustee," "director," "manager," etc., when
appended to signatures to instruments not plainly disclosing
another as principal, and of refusing to hear parol as to the true ca-
pacity in which the signers acted, is a rule which long since has out-
lived the reason back of it? There was a day when but few men were
able to identify themselves as the makers of contracts by the hand-
writing of the signatures—a day also when surnames, in the man-
ner to which we are now accustomed, were a rarity, and John, the
smith (from whom the many Smiths have since descended), was
spoken of in the community and was described in contracts as

"John the smith," or as "John Smith," to distinguish him from John who ran the mill (ancestor of the Miller family), and was described in his contracts as "John the Miller," or John Miller, or from John who lived in the Glen, and was described as "John Glen." In those days, when one of the Johns added the words, "agent," "administrator," "overseer," "trustee," "rector," or some similar designation, after his name in a contract, there was a reason for the inference that he himself was personally contracting, and that the words appended were intended to describe him and to identify him—just as much so as there was for inferring that John who signed his name "John Williamson" intended to bind himself, and not his father William, whose name he also used in the signature as descriptio personæ. But that day has passed. The reason has expired, but the rule persists through juridic pertinacity. If we had the power, we would hasten the day when the courts would relinquish this senseless adherence to precedents which have lost their point, but we have no authority in that direction. Under the constitutional organization of this court, our task is to find the old precedents and to follow them; we are to blaze no new trail, so long as there is an old one.

Construing the notes as the individual undertaking of Saul and Wolfe, we find that their plea is well founded. The notes as to them are without consideration. Though they are under seal and though the law presumes a consideration, a plea that they were in fact based upon no consideration is a good defense. *Lacey* v. *Hutchinson*, 5 *Ga. App.* 865 (64 S. E. 105). According to the plea, the indebtedness represented by the notes was solely the indebtedness of a corporation, the Congregation of Beth Israel; at the time the notes were given it was a pre-existing indebtedness; no new detriment to the promisee, no new benefit to the promisor or the corporation occurred at the time, so as to create a consideration for the giving of the notes. Under all the authorities, the contract between the plaintiff and the defendants was nudum pactum. *Davis* v. *Tift*, 70 *Ga.* 53 (2), 56, and cit; *Russell* v. *Smith*, 97 *Ga.* 287 (23 S. E. 5); *Gay* v. *Mott*, 43 *Ga.* 252; *Davis* v. *Morgan*, 117 *Ga.* 504 (43 S. E. 732, 61 L. R. A. 148, 97 Am. St. R. 171); *Jones* v. *Shorter*, 1 *Ga.* 294 (44 Am. D. 649); *Bailey* v. *Devine*, 123 *Ga.* 656 (51 S. E. 603, 107 Am. St. R. 153). The Congregation of Beth Israel remained bound on its original undertaking, and Saul

and Wolfe did not become bound by theirs, since there was no agreement that one debtor should be substituted for the other. *Whelan* v. *Edwards,* 29 *Ga.* 315. If there had been an extension of time, not originally promised, or a reduction of interest, or a re-lease of the original debtor, or any of these things which the law is wont to treat as consideration, the case would be different; but according to the plea, the case is simply one where these two, with-out any new consideration whatever, attempted to bind themselves to pay the pre-existing debt of the congregation. The fact that Saul and Wolfe agreed to pay attorney's fees, when the congrega-tion had not so promised, was of course no detriment to the promi-see and no benefit to themselves—hence no consideration for the notes.

The notes on their faces say that the consideration is certain unintelligibly-described property. The plea denies that the mak-ers ever received this consideration. This alone would be a per-fect defense, if it were not true that recitals of consideration, es-pecially when ambiguously expressed, are open to inquiry; hence it was necessary that the plea should, as it did, allege that there was no other consideration. Since the recitals of consideration set out in the notes themselves are unintelligible without parol assist-ance, the takers of the notes can not complain when the makers show that there was no consideration at all. *Barco* v. *Taylor,* 5 *Ga. App.* 372 (63 S. E. 224). However, we do not deem it necessary to put the case on this special principle, but rest it on the broader doctrine that lack of consideration is a good defense to every con-tract, under seal or not under seal, negotiable or not negotiable, so long as it is in the hands of the original taker.

*Judgment reversed.*