## 2669. HARTWELL GROCERY COMPANY *v.* MOUNTAIN CITY MILL COMPANY.

Parol evidence is admissible to identify the subject-matter of a written contract, where the same is ambiguous, notwithstanding that the contract recites that it contains all the agreements that are to be binding upon the parties.

DECIDED FEBRUARY 7, 1911.

Complaint; from city court of Hartwell—Judge Hodges. April 11, 1910.

*James H. Skelton,* for plaintiff in error.

*A. G. & Julian McCurry,* contra.

POWELL, J.   This action was brought to recover the purchase price of a lot of flour.   The defendant pleaded that the plaintiff had not shipped the grade of flour which had been ordered, and that, therefore, there had been a failure of consideration.   The plaintiff, it appears, sold the flour through a traveling salesman.   Written memoranda were made showing the sale and the terms thereof.   The contract merely called for so many sacks of "W. than snow," and so many sacks of "St. Elmo."   The grade of flour is not specified.   In the face of the memoranda, the following stipulation appears: "No verbal agreement between salesman and purchaser binding on the company."   The defendant pleaded and attempted to prove that at the time the contract was made, the traveling salesman represented that "Whiter than snow" was the name of a full patent flour, and that "St. Elmo" was a standard half patent, and that the flour shipped did not come up in grade to these representations.   The court excluded the testimony offered to show that these representations had been made, on the ground that the effect of it would be to vary the written contract, especially that portion of the contract which provided that no verbal agreements made between the salesman and the purchaser should be binding.   The court having directed a verdict for the plaintiff, the defendant excepts.

There is a difference between admitting parol evidence to contradict or to vary the terms of a written contract, or to set up new and distinct terms not expressed in the contract, and admitting parol evidence to identify the subject-matter of the contract or to explain ambiguous terms in it.   Now if this written contract before us had specified that the flour should be of a certain grade, and the plaintiff had shipped that grade of flour, the defendant could not have set up that another grade was intended, in the absence of definite allegations and proof showing fraud, accident, or mistake. On the other hand, if the contract had specified in direct language a particular grade of flour, and the plaintiff had sent a flour of different grade, who would question the defendant's right to set up a failure of consideration when sued upon the contract?   The grade having been specified, both parties would be bound by it and would not be allowed to contradict the written contract.   Further, if, under the contract in the present case, the defendant had attempted to set up that certain discounts were to be given, not

specified in the contract, or that there were to be certain premiums or privileges not. referred to in the contract, the plea could not be made available against the plaintiff, because the effect of it would be to vary and add to .the written contract, and to set up verbal agreements of the salesman in violation of the express stipulation of the contract. But in this case we have a contract which does not describe its subject-matter in such language that the court can know without the aid of parol testimony what it means. The contract called for so many sacks of "W. than snow" and for so many sacks of "St. Elmo." These words are arbitrary names, the meaning of which is unintelligible to the court without the aid of parol evidence. They are words which carry with them certainty of meaning only through the application of the maxim, "that is certain which can be made certain." They are ambiguous when standing alone; hence, before the court could give either party any relief against the other as to any matter growing out of the contract and involving an understanding of its terms, it would be necessary that the meaning of these terms be disclosed to the court. If the writing itself, or if other writings contemporaneously executed, disclosed this meaning, it would be the duty of the court, ordinarily, to look to these writings, rather than to oral proof to find this meaning. But since there are no writings giving this meaning, and since the court can not give either to the plaintiff or to the defendant any relief under the contract until the meaning is known, it becomes necessary to look elsewhere for the meaning. Since the words are arbitrarily used, it is the duty of the court to find out what they meant to the parties when the contract was made, and we know of no fairer way of determining the intention of the parties in using this language than to find out what one said to the other when the contract was made; and this is what the defendant attempted to show and what the court refused to allow it to show.

The defendant was manifestly buying flour, and not a name. It would not be reasonable to say that the parties intended that the plaintiff could ship out any grade of flour in sacks branded "Whiter than snow" and "St. Elmo," and comply with its contract. The intention of the parties, as manifested by the written contract itself, was that flour of a certain grade or grades, which they in the contract used the words "W. than snow" and "St. Elmo" to represent, should be shipped out; and the burden was on the plaintiff to

show that it had shipped not only flour branded with these names, but flour actually coming up to these grades which the names were intended to represent. It is true that by reason of the application of a different principle of law the plaintiff was enabled to make a prima facie case by showing that the defendant had accepted delivery of the flour, thus raising a prima facie, and therefore rebuttable, presumption that the flour shipped was "St. Elmo" and "Whiter than snow" in grade as well as in name. But just as the court in the first instance should have allowed the plaintiff to prove that this flour which was shipped was of the grade represented by the names "Whiter than snow" and "St. Elmo," if it had been necessary for the plaintiff to do so in order to make out a case, likewise it was the duty of the court to let the defendant show, when the burden of proof had been cast upon it by reason of the presumption just mentioned, that the flour did not come up to these grades. To allow the defendant to show what the plaintiff's salesman told the defendant these terms stood for in the contract is not to set up any new or outside verbal agreement of this salesman, in contradiction or variance of the contract, but is merely to aid the court in carrying out the identical written contract, according to its very word and letter, by using the oral negotiations only to the extent of ascertaining what these words and letters (ambiguous and unintelligible in themselves) really mean. We have elaborated this proposition at somewhat greater length than may seem needful to some members of the bar, but this distinction between allowing parol proof to identify the subject-matter of a contract, and allowing it to vary or to add to a contract seems to be a hard one for the bench and bar of this State to grasp, as is evidenced by the great number of cases which come to this court in which this distinction is overlooked or misapplied. What we have held here is directly in consonance with the decision of this court in *State Historical Asso.* v. *Silverman,* 6 *Ga. App.* 560 (65 S. E. 293). In the case of *Barrie* v. *Miller,* 104 *Ga.* 312 (30 S. E. 840, 69 Am. St. Rep. 171), this doctrine is very well illustrated and applied. See also *Copeland* v. *Montgomery,* ante, 633 (70 S. E. 30); *McLamb* v. *Lamberlson,* 4 *Ga. App.* 553 (62 S. E. 107); *Barco* v. *Taylor,* 5 *Ga. App.* 372 (63 S. E. 224); *Saul* v. *Southern Seating Co.,* 6 *Ga. App.* 843, 848 (65 S. E. 1065); *Denton* v. *Butler,* 7 *Ga. App.* 267 (66 S. E. 810).                           *Judgment reversed.*