## 16392. BROOKS *v.* KEY & TOWNSEND.

The release of a debtor is a sufficient consideration for the check of a third person to the creditor for the amount of the debt. The evidence in the instant case authorized the inference that the check sued on was supported by such consideration. The verdict in favor of the plaintiff was amply supported and the court did not err in overruling the motion for a new trial.

DECIDED SEPTEMBER 16, 1925.

Complaint; from city court of Columbus—Judge Tigner. March 21, 1925.

Z. A. Brooks agreed to let his nephew have the money with which to purchase the stock of goods and business of W. G. Martin, if Martin's debts did not exceed a certain sum represented by Martin to be the aggregate of his obligations. The purchase and sale agreement being entered into accordingly, Brooks proceeded to give checks to Martin's creditors for their respective claims. What-

ever balance remained of the purchase price after the creditors were thus satisfied was to be paid directly to Martin. Before the transaction was closed it developed that Martin's indebtedness was greatly in excess of the amount represented, and Brooks thereupon undertook to recall the various checks which he had issued. Two of the checks had been made and delivered to Key & Townsend, one for $199.01 and one for $90.55, covering respectively Martin's account and a dishonored check upon which he was indebted to this firm. Key & Townsend subsequently brought suit upon these checks and Brooks, the drawer, defended upon the ground that they were without consideration. The trial resulted in a verdict and judgment in favor of the plaintiffs. The defendant made a motion for a new trial, containing the usual general grounds only, which the court overruled, and the defendant excepted.

*George C. Palmer, Ed. Wohlwender,* for plaintiff in error.
*Hatcher & Hatcher,* contra.

BELL, J. (After stating the foregoing facts.) We think the evidence authorized the verdict. A. T. Fuller sworn in behalf of the plaintiffs testified that as a representative of the plaintiffs and in exchange for the larger check he "receipted the invoice that Mr. Martin owed for $199.01" and that he "asked Mr. Martin about getting Mr. Brooks to make this ninety dollar check good," and one "that had been turned down by the bank," and that Martin assented; that he, Fuller, then carried the dishonored check to the defendant, Brooks, and "Mr. Brooks took the check, looked at it and said 'All right.' He [Brooks] then wrote a check for ninety dollars and something," and handed it to the witness, who in turn delivered it to Key & Townsend. Mr. Key, one of the members of the firm of Key & Townsend, testified, "We received these checks and accepted them in full payment of W. G. Martin's account. That was at the time of the receipt of these checks. When we got the checks we wrote off Mr. Martin's account. . . The goods we sold and for which these checks represented payment were goods that Key & Townsend sold to Mr. W. G. Martin out there. The account was about two weeks old." It appears, from the evidence, that after the purchase from Martin had failed of consummation in accordance with the terms originally agreed upon, there was a meeting of his creditors. Mr. Key was present at this

meeting, but testified that he appeared not as a creditor, but only because he had been notified and requested by another creditor to attend. There was evidence to authorize the inference that he refused to participate in the meeting. T. L. Bowden, an attorney at law, at whose office the meeting was held, testified that "Mr. Key took the position at that meeting that his indebtedness had been settled by some checks." The defendant testified, "I told him (Martin) to get up a list of his creditors and bring them down to the store, and we would pay them off right there. Mr. Fuller and Mr. Martin came down to my store. I don't remember seeing the receipted invoices. He turned it over to Mr. Martin there in the shop, for I gave Mr. Martin the checks. I did not turn the check over to Mr. Fuller, that is the $191 check. I think Mr. Martin turned it over to him there in the place. . . I have not given checks to anyone except Martin. . . Fuller met Martin outside with this bad check, and came back in, and Martin said, 'Give me a check for this too,' and I gave him a check. Martin kept his bad check, and I never had it." The defendant further testified, "I meant in giving the checks I wanted to be certain that they got the money. . . I made the checks payable to the creditors direct."

The jury were amply authorized to find that it was the intention of the parties that the original debtor, Martin, should be released and discharged. The release of Martin was a sufficient consideration for the checks. The evidence sustained the verdict, and the court did not err in overruling defendant's motion for a new trial. See, in this connection, *Davis* v. *Tift*, 70 *Ga.* 52; *Russell* v. *Smith*, 97 *Ga.* 287 (23 S. E. 5); *Saul* v. *Southern Seating & Cabinet Co.*, 6 *Ga. App.* 843 (65 S. E. 1065); *Carr* v. *Rountree*, 9 *Ga. App.* 393 (71 S. E. 589); *Harris* v. *Jones*, 140 *Ga.* 768 (1) (79 S. E. 841).

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*