## 885. WILLIAMS *v.* MOORE-GAUNT COMPANY.

1. The relationship of principal and agent, being confidential and fiduciary in character, demands of the agent the utmost loyalty and good faith to his principal. Any breach of this good faith whereby the principal suffers any disadvantage and the agent reaps any benefit is a fraud of such nature as to preclude the agent from taking or retaining the benefit; also from claiming his commissions.
2. Fraud voids contracts. Fraud sufficient to destroy the contract may be shown by parol, though the contract be in writing.
3. A contract, no matter how solemnly expressed, obtained by an agent from his principal through a violation of the loyalty and good faith imposed by the confidential relation, is void and is not enforceable in law or in equity.
4. An agent who secretly undertakes to represent both parties to a transaction is not permitted to recover commissions from either of them. This rule applies to real-estate agents as well as others.

Action for breach of contract, from city court of Atlanta— Judge Reid. November 6, 1907.

Submitted February 5,—Decided February 24, 1908.

The Moore-Gaunt Company, real-estate agents, sued Mrs. Williams upon the following contract: "I hereby accept the above offer of H. D. Durr [also set out as an exhibit to the petition], upon the terms and conditions therein named, and guarantee the titles to be perfect, and to deliver same, free from legal incumbrance, to the purchaser, and to pay Moore-Gaunt Co., for having negotiated the above sale, a commission on the gross amount, as follows: viz., 5 per cent. on the first two thousand dollars, and 2-1/2 per cent. on the excess over the first two thousand dollars. In event the buyer fails to pay for the property as stipulated above, then the amount paid is forfeited, and is to be kept by Moore-Gaunt Co., as part compensation for services rendered by them in the trade. This Sept. 29, 1906. [Signed] Mrs. Ephie A. Williams, owner." They alleged, that Durr offered to consummate the trade, was ready and willing to purchase on the terms named, but that Mrs. Williams refused to comply with her contract to convey, and that she was therefore due them the commissions specified in the contract. She offered the following plea, which, on demurrer by the plaintiff, was stricken by the court:

(1) "Defendant says that she was the owner of the residence known as 173 Oak street, which was occupied by defendant and her minor children as a home. (2) On or about the 18th day

of September, plaintiff, who was unknown to defendant, called upon her and represented to her that she ought to sell her home; that he was in the real-estate business and knew all about real-estate matters, and could get her a fancy price for the property, if she would just leave it to him. (3) Defendant's husband had but recently died; she was possessed of but little means, was earning no money from any position, and her minor children were a source of expense to her, in her efforts to obtain for them support and education. (4) Defendant declined to sell her home, stating that it would leave her and her children without a home, but plaintiff strongly urged and insisted that defendant was in debt, and that if she could obtain a fancy price for her home, she could pay herself out of debt, and have something to live on. (5) Finally, having no mature person upon whose experience she could rely, for advice, and being overpersuaded by the urgent insistence of plaintiff, she asked him what price she ought to accept for the place, and plaintiff advised defendant that she could not get more than $2,500 for the property, and that it was a fancy price for the place, and she ought to sell it at that price without delay; in which advice defendant finally acquiesced. (6) Subsequently, Mr. H. D. Durr, who was unknown to defendant, called upon her, and asked leave to inspect the property with a view to its purchase, but defendant stated to him that she did not desire or intend to sell the place, and the said H. D. Durr left, stating that the place was too small for his purpose anyhow. In the course of the conversation defendant stated to the said H. D. Durr that she would under no circumstances sell the place, if she had to abandon it as a home, and that she would only consider an offer on the express condition that she could continue to occupy it as a tenant. (7) After this conversation, plaintiff again called on defendant, urging her to renew her offer of sale, and stating that he could, without difficulty, induce the said H. D. Durr to rent the place to defendant, so that she could still occupy it as a home by paying rent to him. (8) Defendant, in the meantime, having obtained reliable advice to the effect that the property was worth much more than the amount offered to her, and that the proposed plan of selling the property for $2,500 and renting the place from the purchaser, at the rate suggested, would result in a great loss to her, notified plaintiff that she would not sell the place, and that any

negotiations looking to its sale must be declared off. (9) Plaintiff then exhibited to defendant a printed contract, which appeared on its face to have been executed on September 29, 1906, the date on which the following transactions occurred, which contract appeared to have been signed by H. D. Durr as purchaser of the property referred to, and alleging that the said Durr had, on that date, paid the plaintiff the sum of $25 as part payment to bind the trade. Said date, however, being subsequent to the revocation of defendant's agreement to allow the sale of said place by or through plaintiff, defendant therefore declined to sign the attached printed blank which plaintiff urged her to sign, stating that she did not desire or intend to sell her home. (10) Plaintiff then stated to defendant that unless she signed the atttached blank or acceptance, which was a part of the printed contract signed by the said H. D. Durr, but which had not been signed by defendant, she would lose her place, and that the said Durr would take her into court and force her to make him a deed, because said plaintiff had accepted $25 as part of the purchase-price; and that unless said acceptance was signed, the court would force her to make a deed to the said H. D. Durr, and that defendant would then, in that event, have to pay plaintiff the real-estate commissions involved in the transaction, but that if defendant would sign the attached acceptance, it would put her in a position where the plaintiff could get his commissions out of the said H. D. Durr, under plaintiff's contract with Durr, and that the defendant would thereby be relieved of any payment to plaintiff in the way of commissions, and that the plaintiff could and would satisfy the said H. D. Durr, by selling him another piece of property equally as good, and the defendant could, therefore, retain her home without being involved in any cost or expense. (11) Plaintiff represented to the defendant that he was very familiar with all matters connected with real-estate trades; that he was her agent in the matter; that she had no experience in such transactions, and that she ought to rely upon his advice to save her property and to avoid expense for commissions, and that if she would act on his advice, instead of asking the advice of others, she would save her place, and be relieved of any expense of commissions. (12) Defendant being a woman, and having recently lost her husband, and being distressed with the care of her small children, and being in debt,

and being wholly inexperienced in such matters, all of which facts were known to plaintiff, and not then being aware that plaintiff was in fact acting in a dual capacity as agent also for the said H. D. Durr, and believing that plaintiff was acting, as he asserted, in her behalf, and for her interests, to save her home, and to relieve her from commissions, signed said blank form of acceptance, tendered by plaintiff. (13) Defendant says that plaintiff thereupon partially performed his undertaking with defendant, and induced the said H. D. Durr not to insist upon taking defendant's property at the low price he had offered, but to purchase other property elsewhere; and said H. D. Durr accordingly abandoned said contract of purchase. (14) Nevertheless, plaintiff then demanded and still demands, contrary to his promise, representations, and agreement with this defendant, that she pay the plaintiff the amount of commissions that would have been due if said contract of purchase had been carried out between the parties. (15) Defendant says that said conduct on the part of plaintiff was intended and operated to induce her to sign said acceptance, under the belief that it would absolve defendant from liability, instead of operating to create an obligation on her part towards defendant; and at the time when plaintiff knew that defendant had revoked any authority of sale, and would not sell her home, and that there was no consideration for said contract set up against defendant. (16) Defendant says, further, that she is not indebted to plaintiff in any sum under said alleged contract. (17) Plaintiff was, at the time of said transaction, also the agent of the said H. D. Durr, and knew of defendant's revocation of said offer of sale, before and at the time said alleged contracts were executed; and even under the terms of said contract, defendant is not liable to plaintiff in any amount, although, for the reasons set forth, defendant says that said contract, being without consideration, and being fraudulently procured, is illegal, and can not be enforced against defendant."
Verdict being rendered against the defendant, she brings error.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.

*Moore & Pomeroy,* contra.

POWELL, J. (After stating the foregoing facts.)

1. The relationship of principal and agent is fiduciary in character, and imposes upon the parties the duties of exercising toward each other the utmost good faith. Civil Code, §4030. The

law implies, as a part of the contract by which every agency arises, that the agent agrees to have and exercise, for and toward his principal, loyalty and absolute good faith; and any breach of this implied contract on his part forfeits his right to commission. Civil Code, §3014; *Gann* v. *Zettler,* ante, 589 (60 S. E. 283) ; *Ramspeck* v. *Pattillo,* 104 *Ga.* 772 (30 S. E. 962, 42 L. R. A. 197, 69 Am. St. R. 197) ; *Sessions* v. *Payne,* 113 *Ga.* 955 (39 S. E. 325). If the agent practices upon the principal any deception (whether intentional or not) whereby the principal is misled and damaged and the agent would reap any benefit, the transaction is fraudulent, and the courts will not allow the agent to take or retain the benefit. *Hawk* v. *Leverett,* 71 *Ga.* 675; *Sims* v. *Ferrill,* 45 *Ga.* 585; Civil Code, §§3669, 4026. All sane men are supposed to know the law, but some do not; they are likewise supposed to be capable of protecting their own interests in the contracts they make, but some are not; hence those who do not know the law, or who are not capable of protecting their own interests in the making of contracts, are sometimes put to the necessity of employing skilled agents, in order that they may enjoy those advantages which the law presumes are common to all men, but which the law realizes they do not always personally possess. The very motive which would lead an ordinary citizen to pay a real-estate agent to represent him in the sale of his property is a belief that the agent can protect his interests in the transaction better than he can protect them himself; otherwise there would be no sense in his incurring the expense of hiring the agent. When the agent, instead of using his skill to remedy his principal's ignorance of the law, expressly misinforms him in respect thereto, and, instead of furthering the client's interest, in opposition thereto furthers his own, the contract of agency is subverted from the very foundations; and to allow the agent to reap any advantage from such a violation of his contract and duty would be utterly antagonistic to every principle of right, reason, and law.

2. It is true that the plea in this case sets up a state of facts resting solely in parol, which contradicts the written contract both in terms and in legal effect. As a general rule, a person signing an instrument purporting to bind him to the performance of obligations or the payment of money will not be permitted to prove by parol that no such object and intention existed between the par-

ties—in other words, to prove a purpose wholly at variance with the plain tenor and import of the writing. *Hirsch* v. *Oliver,* 91 *Ga.* 554, 560 (18 S. E. 354). We concede that under this plea the defendant sought to do all that; but she sought to do more,— not merely to contradict the writing, but absolutely to destroy its very existence. For if the writing was the result of a fraud, it was not a contract at all, but mere paper and ink without the slightest substance of legal efficacy. Civil Code, §3669; *Janes* v. *Mercer University,* 17 *Ga.* 515; *Barrie* v. *Miller,* 104 *Ga.* 312 (30 S. E. 840, 69 Am. St. R. 171); *McCrary* v. *Pritchard,* 119 *Ga.* 876, 880 (47 S. E. 341); *Wood* v. *Cincinnati Safe Co.,* 96 *Ga.* 120, 124 (22 S. E. 909); *Chapman* v. *Atlanta Guano Co.,* 91 *Ga.* 821 (18 S. E. 41). Fraud is to be abhorred; it vitiates everything it touches; and the person guilty of it is not to be countenanced in any way by the courts. We restate these venerable precepts not because they are in any doubt or disrepute, but because the human mind has sometimes the fault of being distracted from the obvious by being too attentive to the special, of sometimes overlooking irrefragable principles by concentrating notice too strongly on physical precedents, which, though trustworthy upon their particular facts, in no wise vary the general proposition, but only distinguish it the more clearly, as exceptions emphasize a rule.

3. In this case, according to the plea, the defendant, relying, as she had a right to do, upon the representations of her agent, and not upon her skill and judgment or knowledge of the law, was misinformed both as to the actual facts as they existed and as to the legal purpose and tenor of the paper she signed. Not only that, but the signing itself was procured by a false representation to her that she was already legally bound to convey the property, and that if she did not enter the proposed plan, she would lose her home. Now as between parties sustaining no confidential relations, it is not every misrepresentation of the law or of the legal effect of the paper, or of the status of things present or future, that will constitute fraud. There, presumptively, the party contracting knows the law, knows his rights, has the discretion and ability to investigate the facts for himself, and can not justify a gross failure to exercise his own faculties and facilities to the protection of his own interests. In such cases the law will not let the maker of the contract set up as fraud the fact that his own neg-

ligence and inattention to the matters in hand have caused him to be overreached; and will therefore not permit him to say that the writing he has voluntarily signed, as the solemn embodiment of his contract, does not speak the truth. *Bostwick* v. *Duncan,* 60 *Ga.* 384; *Jossey* v. *Railway Co.*, 109 *Ga.* 446 (34 S. E. 664); *Walton Guano Co.* v. *Copelan*, 112 *Ga.* 319 (37 S. E. 411, 52 L. R. A. 268), and cit.; *Maxwell* v. *Willingham,* 101 *Ga.* 55 (28 S. E. 672). In these cases the law considers the hardship on the maker the result not of fraud, but of his own negligence. But it is not negligent for one to rely upon the fidelity and loyalty of another, whom he has hired to be faithful and loyal. · The existence of confidential or fiduciary relations between the parties excuses that vigilance which the law would otherwise demand. ·A breach of this confidence, a violation of the implied contract for utmost good faith, is in law a fraud. *Kellam* v. *Allen* (sub nom.) *Roe* v. *Doe,* 31 *Ga.* 544; *Granniss* v. *Bates,* 55 *Ga.* 148, 150. A typical application of this principle is found in the case of *Hawk* v. *Leverett,* 71 *Ga.* 675. The headnote there states the proposition involved thus: "If a vendor of land acted upon the advice of her agent or friend and confidential adviser, and accordingly made to the vendee a deed instead of a bond for titles, and took notes for the deferred payments of purchase-money, believing, under the advice given, that the land would always be subject for the purchase-money, and the agent or friend thereafter bought the land from the original vendee, equity will relieve the vendor against the effect of the deed, and subject the land to the payment of the purchase-money, although no fraudulent suggestion or practice may have been used to induce the making of the deed." In other words, the court, in effect, held, that because the agent misinformed his principal as to the law governing the transaction, even though at that time the agent may have believed his advice to be correct, the true legal tenor and effect of the written contract would be disregarded, and the principal would, as against the agent who was about to reap an advantage from the bad advice given, be entitled to every right which she would have had if the legal effect of the writing had been as the agent represented it would be. In *Sims* v. *Ferrill,* 45 *Ga.* 585, the fiduciary, by misrepresenting, to the woman who had imposed trust in him, that the title to her

land was not perfect, secured a contract advantageous to himself. The court promptly set it aside.

In the case at bar, the demurrer to the plea admits, that the relation of principal and agent, a relation which the law declares to be confidential, existed between the parties; that the defendant was inexperienced in business, was a person of small means, and was suffering the distresses of being recently left widowed with minor children dependent upon her; that the plaintiff called upon her, and, assuring her of his skill and experience in selling property, advised her to sell her home at a price less than its real value, telling her that this would be a fancy price; afterwards he further deceived her by telling her that Durr, by reason of the fact that he had deposited with the agent $25 and had signed a contract to take the property, could take her into court and force her to make a deed to her home, which she did not wish to sell at all unless she could make a satisfactory arrangement as to leasing it back; and that in addition to having to deed away her home, she would be liable for real-estate commissions; but that if she would sign the contract presented (the one which is the basis of the present suit), he could save her home for her, could induce Durr to take another piece of property, and could thus save her all expense as to commissions. Through these and other impositions upon her confidence and inexperience, he procured the contract. This sets up such fraud as to vitiate the contract, and such a breach of duty as to deprive the agent of commissions. Any of the misrepresentations as to the value of the property, as to Durr's power to force her to make a deed, as to the agent's power to hold her to commissions after she had forbidden him to sell, as to Durr's situation and attitude toward the matter, as to the purpose and effect of the written contract itself, separately or collectively, amount in law to fraud, and to such a breach of the contract of agency as to prevent a recovery of commissions.

4. The plea further alleges, that, unknown to her, the plaintiff was acting also as agent for Durr, in the very transaction upon which the suit is based. This allegation alone is of such defensive value as to make the striking of the plea error. The existence of an undisclosed duality of agency is always a good defense to a claim for commissions, whether the contract to pay the same be in writing or not. *Gann* v. *Zettler,* ante, 589 (60 S. E.

283), and cit. Real estate agents stand, in relation to their principals, somewhat as attorneys at law do to their clients. A high degree of honesty is to be expected of them; and the law will not countenance any breach of fidelity. Their principals are entitled not only to an absence of deceit, or misrepresentation, but also to the fullest and fairest disclosure of all things affecting their rights in the subject-matter of the dealings.

If Mrs. Williams can prove the allegations of her plea, the plaintiff is not entitled to recover; therefore the court erred in striking it, and in not permitting proof in its support.

*Judgment reversed.*