1942. STATE HISTORICAL ASSOCIATION *v.* SILVERMAN.

1. Parol evidence is admissible to show that a contract was procured by fraudulent misrepresentations, especially where the misrepresentations set up are not contradictory of the express terms of the contract.
2. Parol evidence is admissible for the purpose of applying the terms of the written contract to the subject-matter and removing or explaining any uncertainty or ambiguity which arises from such application.

Certiorari, from Fulton superior court—Judge Pendleton. April. 27. 1909.

Argued July 19,—Decided July 31, 1909.

*J. F. Golightly, C. B. Rosser Jr.,* for plaintiff.

*Kontz & Austin,* for defendant.

POWELL, J. The State Historical Association sued Silverman upon the following contract: "No agreement recognized unless embodied herein. No. 89. May 20, 1906. State Historical Association. I accept your offer, as·printed on the other side hereof, and agree to take your work on Georgia, in three volumes, for which I will pay you or order twenty-eight dollars when the books are shipped to me or left at my residence or place of business." Name, H. Silverman. Address, 256 Rawson. Occupation, Pres't of Silverman Catering Company." On the reverse side the following printed words appear: "The State Historical Association offers and agrees to publish and deliver to subscribers therefor the work on Georgia in accordance with the following stipulations: It will comprise sketches of: First—Important events in Georgia History. Second—Counties, cities and towns. Third—State institutions. Fourth—Associations of lawyers, physicians, teachers, bankers, editors. Fifth—Persons. The right to change editors is reserved by the publisher, and such change is not to invalidate orders for the books. The work will be issued in three octavo volumes handsomely bound in half leather with marble edges. The price is twenty-eight dollars. State Historical Association, Atlanta, Ga."

Among other things, Silverman pleaded, that he was induced to subscribe for the books through the representation of the agent selling them that they would contain the compilation of the colonial records and the early history of Georgia, collected and prepared by ex-Governor Allen D. Candler; that the representation was untrue when made; that the books do not contain the compilation; that this representation induced him to subscribe for the books, and as soon as he discovered that the representation was not true he promptly offered to rescind the contract and tendered back the books. The magistrate struck the plea, and the trial in the justice's court resulted in a verdict against the defendant. The superior court, on certiorari, held that the magistrate erred in striking the plea; and the case is here on exception to the judgment of the superior court.

The insistence of the plaintiff in error is that the plea was merely an attempt to vary the terms of a written contract by extrinsic and parol evidence. We do not agree with this view of the matter. There is a wide difference between varying the terms of the written contract by parol or other extrinsic evidence, and show-

36

ing by parol or other extrinsic evidence that a contract never existed, because of fraudulent representations, arts, or devices by which it was induced. The parol evidence in the latter case does not alter, vary or contradict the contract, but absolutely destroys it. *Williams* v. *Moore-Gaunt Co.,* 3 *Ga. App.* 756 (60 S. E. 372). The fraud may consist in a misrepresentation of the thing which is the subject-matter of the contract; especially is this true where there is nothing in the terms of the contract which actually contradicts the facts about which the misrepresentation is alleged to have been made. *Janes* v. *Mercer University,* 17 *Ga.* 515; *Epps* v. *Waring,* 93 *Ga.* 765 (20 S. E. 645); *Barrie* v. *Miller,* 104 *Ga.* 312 (30 S. E. 840, 69 Am. St. R. 171).

But the plea in this case is sustainable on another ground: when analyzed it does not contradict the terms of the written contract, but merely identifies the subject-matter thereof and makes certain an ambiguity appearing therein. It will be noted that the book which the defendant bought had not then been published; it was in process of preparation. It was a thing not in esse, and therefore he could not have examined it before purchasing. It is true that the contract states that the books would contain certain things; among others, "Important events in Georgia History." What important events were to be included is not stated. There is nothing to show that the enumeration of subjects mentioned in the contract is exclusive or exhaustive. The plea sets up that the agent represented that the books would contain the compilation of the colonial records of Georgia and the early history thereof then being prepared by ex-Governor Allen D. Candler. One signing the contract might well have thought that the statment that the books would contain sketches of important events in Georgia history referred to the compilation of the colonial records mentioned by the agent. It is a matter of which we can take judicial cognizance that ex-Governor Allen D. Candler has been employed by the State to make a compilation of the nature referred to, and that he has been engaged in this valuable work for several years. The parol testimony sought to be introduced under the defendant's plea simply tended to make the contract definite and to explain the ambiguous and equivocal statement that the book would contain sketches of important events in Georgia history. As was said in the case of Stoops *v.* Smith, 100 Mass. 63, 66 (1 Am. R. 85, 97

Am. D. 76), "For the purpose of applying the terms of the written contract to the subject-matter, and removing or explaining any uncertainty or ambiguity which arises from such application, parol testimony is admissible, and has a legitimate office. For this purpose, all the facts and circumstances of the transaction out of which the contract arose, including the situation and relations of the parties, may be shown. Gerrish v. Towne, 3 Gray, 82; Herring v. Boston Iron Co., 1 Gray, 134; Sutton v. Bowker, 5 Gray, 416; Bradley v. Washington, Alexandria & Georgetown Steam Packet Co., 13 Pet. 89 [10 L. ed. 72]; Price v. Mouat, 11 C. B. (N. S.) 508. The subject-matter of the contract may be identified by proof of what was before the parties, by sample or otherwise, at the time of the negotiation. Bradford v. Manly, 13 Mass. 139 [7 Am. D. 122]; Hogins v. Plympton, 11 Pick. 97; Clark v. Houghton, 12 Gray, 38; Haven v. Brown, 7 Greenl. 421 [22 Am. D. 208]. The terms of the negotiation itself, and statements therein made, may be resorted to for this purpose. Foster v. Woods, 16 Mass. 116; Sargent v. Adams, 3 Gray, 72 [63 Am. D. 718]; Mumford v. Gething, 7 C. B. (N. S.) 305; Chadwick v. Burnley, 12 Weekly Rep. (Q. B.) 1077. . . Woods v. Sawin, 4 Gray, 322; Hart v. Hammett, 18 Verm. 127; Putnam v. Bond, [100 Mass. 58 (1 Am. R. 82)]. The purpose of all such evidence is to ascertain in what sense the parties themselves used the ambiguous terms in the writing which sets forth their contract. If the previous negotiations make it manifest in what sense they understood and used the terms, they furnish the best definition to be applied in the interpretation of the contract itself. The effect must be limited to the definition of terms used, and identification of the subject-matter. If so limited, it makes no difference that the language of the negotiations relates to the future, and consists in positive engagements on the part of the other party to the contract. Their effect depends, not upon their promissory obligations, but upon the aid they afford in the interpretation of the contract in suit. They are not the less effective for the purposes of explanation and definition because they purport to carry the force of obligation." The action in that case was on a written contract to pay the plaintiff "fifty dollars for inserting a business card in two hundred copies of his advertising chart, to be paid when the chart is published."

The plaintiff claims that the clause of the agreement, "The

right to change editors is reserved by the publishers, and such change is not to invalidate the order for the books," would prevent the purchaser from pleading that the particular matter promised from ex-Governor Candler was not included.    The defendant's plea is not that the plaintiff changed editors, but that the book failed to contain definitely-described matter which the agent represented it would contain, and which the contract as written by them indicated it would contain.    The plea did not attempt to vary the terms of a written contract, and the magistrate erred in striking it, and the judgment sustaining the certiorari is                *Affirmed.*