# CASES

DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

AT THE

## MARCH TERM, 1914

---

### 5428.  POLLOCK et al. v. SKELTON et al.

1. The fact that a contract is in writing does not protect it from attack by parol evidence tending to show that it was procured by fraud.
2. The relationship of principal and agent demands of the agent entire loyalty and good faith to the principal, and any breach of such faith and loyalty, resulting in advantage to the agent at the expense of the principal, will, at the instance of the principal, void a contract between them, procured by such breach.

DECIDED JULY 21, 1914. REHEARING DENIED JULY 27, 1914.

Attachment; from city court of LaGrange—Judge Harwell. November 29, 1913.

An attachment issued in behalf of George D. Pollock and Norris N. Smith against James E. Skelton and W. H. Bruce, to recover $1,000, alleged to be due as purchase-money for a certain bottling plant at West Point, Georgia. The declaration filed thereon alleged that the defendants purchased the bottling plant from the plaintiffs on February 21, 1912, for $4,000, of which $1,000 and interest, represented by a note covering the balance of the purchase-price, was due and remained unpaid, and the plaintiffs prayed judgment therefor against the defendants and the sureties on their replevy bond.

The defendants in their answer averred, that they were not indebted to the plaintiffs in any sum whatever, but on the contrary had been damaged by the plaintiffs in the sum of $2,000; that the plaintiffs and the defendant Skelton resided at Rome, Georgia, on or about February 21, 1912, and that shortly before that date the plaintiffs, who were largely interested in a certain corporation man-

1

ufacturing and selling a syrup used in the concoction of a "soft" drink, dispensed by bottlers in different localities, approached Skelton and represented to him that if he and Bruce, the other defendant, would purchase a certain bottling plant at West Point, Georgia, then owned by the West Point Wholesale Grocery Company, the plaintiffs would agree that the defendants might dispense in that territory the "soft" drink manufactured by the plaintiffs; that the plaintiffs stated further that the owners of the bottling plant demanded $4,500 for it, but that they thought it could be bought for less if the defendants desired to purchase it; and they agreed to accompany Skelton to West Point, Georgia, to assist him in effecting the purchase; that they went with him to West Point, as agents for him and Bruce, and on arrival at the place suggested to him that he go to a hotel and remain there, as they could trade better for him, and they would see the grocery company and obtain the best price they could on the bottling plant and the property belonging thereto; that the plaintiffs went alone to see the grocery company, and after a time returned to Skelton and stated to him that they had purchased the plant for himself and Bruce, for $4,000, and had thereby saved him and Bruce $500; that the plaintiffs then agreed to take a certain house and lot owned by Skelton in Rome, Georgia, at the price of $3,000, in part payment for the bottling plant, and to accept the note of the two defendants for the balance; that in order to execute the trade, the plaintiffs caused the defendants to enter into a written agreement with them, based on representations that the selling price of the bottling plant demanded by the grocery company was $4,000, and under this agreement Skelton was to convey to the plaintiffs his home in Rome, and the note for $1,000 was to be executed in addition, and the plaintiffs were to pay for the defendants the $4,000 to the grocery company; that the plaintiffs, in their negotiations with the grocery company, were acting as the undisclosed agents of the defendants, and were agents of the defendants when they effected the purchase of the bottling plant, and when making the false and fraudulent representations to the defendants which brought about the execution of the deed from Skelton, and the signing and delivery of the note from the defendants to the plaintiffs; that the plaintiffs actually paid only $2,000 for the bottling plant, and but for their false and fraudulent representation that the cost of the plant was $4,000,

Skelton would not have executed the deed, and the defendants would not have signed the note sued upon and entered into the contract, a copy of which was attached to their plea; that the real facts concerning the trade and the amount of the consideration paid or to be paid by the plaintiffs to the grocery company did not become known to the defendants until just before the date of the attachment, as the design and purpose of the plaintiffs was to keep the defendants from knowing the actual terms and amount paid to the grocery company for the bottling plant; that the consideration of the note which was the basis of the attachment entirely failed, and they received nothing of value for it; and also that they were damaged in the sum of $2,000 by reason of the facts alleged by them. By amendment the defendants set up that in the event it should appear that the plaintiffs were not their agents in the purchase of the bottling plant, they were entitled to recover against the plaintiffs $900 on account of the shortage in certain goods or articles purchased from the plaintiffs but not received, as set forth in a paragraph of the original plea. The following allegations occur in the plea: "The said Skelton and Bruce relied on the representations that the plant cost them only the sum paid to the owner by their agents, Pollock and Smith, and, acting on said representations aforesaid, Skelton parted with the title and possession of his home, worth more than $3,000, and the two defendants herein executed the said note sued on. But for the fraudulent representations thus made, the said defendants would not have traded, nor parted with their property, nor executed the said note."

The evidence in behalf of the defendants sustains, on every material point, the allegations made in their plea. They introduced in evidence the contract covering the sale of territory for the dispensing of "Cherry Nectar," dated February 21, 1912, and a contract of sale, from the West Point Wholesale Grocery Company to the plaintiffs, of the bottling plant, equipment, and supplies of the West Point Wholesale Grocery Company, for the sum of $2,000, of which $500 was payable within sixty days and the balance in two payments, on September 15, 1912, and September 15, 1913. The description of the property sold is the same as that in the contract of sale from the plaintiffs to the defendants. This contract further provides that the bottling plant is to run on in the usual way, and accounts shall be kept of expenses, and sales be

turned over to the plaintiffs within a stated time. The contract is headed "West ·Point, Georgia, February 19, 1912." The contract for the sale of the bottling plant to the defendants was on paper headed "Cherry Nectar Company," and was as follows: "Rome, Georgia, Feb. 21, 1912. This agreement made and entered into this day and between Smith & Pollock of Rome, Georgia, of the first part, and J. E. Skelton and his associates, of the second part, witnesseth: That the said parties of the first part, for and in consideration of four thousand dollars ($4,000), do hereby bargain and sell unto the said J. E. Skelton and his associates, parties of the second part, a certain bottling plant at West Point, Georgia, recently operated by the West Point Wholesale Grocery Company, and the said parties of the first part agree to take in payment therefor a certain piece of property in the fourth ward in Rome, Georgia, now occupied by J. E. Skelton, to be valued at three thousand ($3,000) dollars, and a promissory note for one thousand ($1,000) dollars, dated February 21, 1912, and due in six months after date, with·interest at eight per cent. The said bottling plant to consist of two crown machines and one Hutchinson machine, one carbonator, one gasoline engine, one soaker vat, at least one minimum car of bottles (30,000 lbs.), at least three barrels of Coca-Cola Syrup, $200 worth of extracts of various kinds, and all of the bottles and·bottling cases used and belonging to the said bottling plant, also one buggy, two two-horse wagons, two bay mules used by the plant, harness for the wagon, and five hundred or more gross of crowns. Said Smith & Pollock agree to turn over to said J. E. Skelton and his associates all of the property, together with the rights and privileges which it has bought from the said West Point Wholesale Grocery Company. [Signed] Smith & Pollock, by Norris N. Smith (L. S.). Jas. E. Skelton, W. H. Bruce (L. S.)."

The defendant Skelton testified that nothing was said, in so many words, to the effect that the plaintiffs should act as his "agents" in effecting the trade with the grocery company, but that they agreed to buy the plant for him and his associates as cheaply as possible. There was also testimony as to shortage in the goods covered by the contract of purchase, but this testimony is immaterial in determining the questions presented here. It appears further that Pollock and Smith were respectively president and secretary of the Cherry Nectar Company of Rome, Georgia. The

evidence of the defendants, tending to show that the relation of principal and agent existed between themselves and Pollock and Smith, was denied by the plaintiffs, but the plaintiffs admitted that Skelton had consulted them in regard to getting territory in which to bottle "Cherry Nectar," manufactured by a corporation in which they were interested. They denied that any misrepresentations had been made, and insisted that they had simply advised Skelton that the plant would cost Skelton, or Skelton and Bruce, $4,000, without representing to him what price the plaintiffs would have to pay the grocery company.

The jury returned a verdict against the plaintiffs on the note sued upon, and in favor of the defendants for $1,000 damages. A motion for a new trial was made by the plaintiffs on the general grounds, and on a number of special grounds; the motion was over-ruled, and a bill of exceptions was thereupon sued out.

*Hatton Lovejoy, J. M. Hunt,* for plaintiffs.

*A. H. Thompson,* for defendants.

WADE, J. (After stating the foregoing facts.) On the general grounds it is unnecessary to say more than that the evidence in behalf of the defendants was sufficient to support the allegations made in their plea and the verdict rendered by the jury, and while there was evidence to the contrary, any consideration or discussion of that evidence is concluded by the verdict.

The 1st, 2d, 3d, 4th, 5th, 6th, 7th, 11th, 12th, and 13th special grounds of the motion for a new trial are addressed to the proposition that the court erred in admitting certain evidence offered in behalf of the defendants, to establish the relation of principal and agent between them and the plaintiffs, and evidence as to whether the defendants would have entered into the contract to purchase the bottling plant, had they been apprised of the fact that the price paid for it by the plaintiffs was only one half as much as the price stipulated to be paid to the plaintiffs by the defendants, and evidence as to the experience or knowledge the defendant Skelton had of bottling-works machinery, and testimony to the effect that one of the plaintiffs had specifically stated to the defendant Skelton that the plaintiffs had saved the defendants $500, since they had effected the purchase of the bottling plant for the sum of $4,000, and evidence that the defendant Skelton was relying on the plaintiffs to purchase the property, and in fact all the conversations

between the plaintiffs and the defendant Skelton; it being contended that all of such evidence was inadmissible as contradicting by parol the written contract between the parties, which showed a direct sale from the plaintiffs to the defendants, and negatived the idea of agency altogether.

Counsel for the plaintiffs insist that since the defendants pleaded the written contract with them, and made no effort to rescind, cancel, or void it, the defendants were bound by its terms; and that since the written contract establishes a direct sale between the plaintiffs and the defendants, with no reference whatever to agency, all testimony touching the antecedent negotiations, representations, or agreements between them were merged in the contract as actually signed; and that, since it did not appear that any confidential relations existed between the parties, the contract could not be avoided on the ground that it was procured by fraud. It is perhaps true that with the exception of the allegations noted in paragraph 10 of the defendants' plea, given above, fraud is not charged eo nomine, but it is likewise true that the defendants allege specific acts and misrepresentations on the part of the plaintiffs amounting to fraud, and clearly charge an abuse of the confidential relation alleged by the defendants to have existed between the plaintiffs and themselves, which would amount to fraud if proved; and the jury evidently considered the proof sufficient. The fact that the pleader did not in so many words label the alleged misrepresentations (which were declared to be fraudulent) as fraud that voided the contract induced thereby is not material, for the allegations themselves plainly spelled out "fraud," and that in capital letters.

If the contract of purchase between the plaintiffs and the defendants was obtained by fraud, proof of the fraudulent acts or misrepresentations which induced the defendants to sign it could be shown by parol evidence, without violating the principle that parol contemporaneous evidence is not admissible to contradict or vary the terms of a *valid* written instrument. Since fraud voids all contracts, if Skelton and Bruce were induced to sign the agreement by the representation that the property then and there conveyed to them was or would be purchased from the West Point Wholesale Grocery Company for $4,000, when in point of fact it had already been purchased by Smith and Pollock from the grocery company for $2,000 only, and if, without this misrepresentation,

Skelton and Bruce would not have made the purchase, then the contract was obtained by and based upon fraud, and hence legally was a mere nullity, having absolutely no binding effect upon Skelton and Bruce; and none of the terms of such a void instrument can be considered in fixing and determining the actual relations between the parties, and the jury were relegated to the oral testimony to determine what those relations were. The jury evidently concluded that the contract was obtained by fraud, and therefore was an absolute nullity as to all its terms; and this written contract having been in this way extinguished, erased, or eliminated, the jury then resorted to parol testimony to determine the relation between the parties, and, accepting the testimony in favor of the defendants, found that the plaintiffs, in purchasing the plant, originally were acting as agents for the defendants, that they had violated the trust imposed upon them by their confidential relation to the defendants, and had thereby obtained from the defendants the note for $1,000 without consideration, and had otherwise damaged them in the amount of $1,000 additional.

"There is a wide difference between varying the terms of the written contract by parol or other extrinsic evidence, and showing by parol or other extrinsic evidence that a contract never existed, because of fraudulent representations, arts, or devices by which it was induced. The parol evidence in the latter case does not alter, vary, or contradict the contract, but absolutely destroys it." *State Historical Association* v. *Silverman*, 6 *Ga. App.* 560 (65 S. E. 293). See also *Williams* v. *Moore-Gaunt Co.*, 3 *Ga. App.* 756 (60 S. E. 372). "The fraud may consist in a misrepresentation of the thing which is the subject-matter of the contract; especially is this true where there is nothing in the terms of the contract which actually contradicts the facts about which the misrepresentation is alleged to have been made." *State Historical Association* v. *Silverman*, supra; and see *Janes* v. *Mercer University*, 17 *Ga.* 515; *Epps* v. *Waring*, 93 *Ga.* 765 (20 S. E. 645); *Barrie* v. *Miller*, 104 *Ga.* 312 (30 S. E. 840, 69 Am. St. R. 171). "The relationship of principal and agent, being confidential and fiduciary in character, demands of the agent the utmost loyalty and good faith to his principal. Any breach of this good faith whereby the principal suffers any disadvantage and the agent reaps any benefit is a fraud of such nature as to preclude the agent from taking or retaining the benefit; also

from claiming his commissions. A contract, no matter how solemnly expressed, obtained by an agent from his principal through a violation of the loyalty and good faith imposed by the confidential relation, is void and is not enforceable in law or in equity." *Williams* v. *Moore-Gaunt Co.,* supra.

The fraud in this case consists in the misrepresentation as to the purchase-price paid or agreed to be paid by the plaintiffs to the grocery company, a subject-matter of the contract, but there is nothing in the terms of the contract itself which actually contradicts the fact that only $2,000 was paid for the bottling plant by the plaintiffs, and that the plaintiffs represented to the defendants that the plant cost $4,000; and it does not distinctly appear from the terms of the contract that the relation between the parties was then and had always been that of vendor and vendee, and the testimony declaring the original relation between them to have been that of principal and agent contradicted no express statement in the contract. So, if the contract was actually obtained by fraudulent representations and was absolutely void, there was nothing to prevent the introduction of parol testimony to show what the actual relation between the parties was. "Inadequacy of price is not per se sufficient to set aside a sale, unless it is so gross as, when combined with other circumstances, to amount to fraud; but if it be great, it is of itself a strong circumstance to evidence fraud, and this is true where it is attended by any other fact showing the transaction to be unfair, or unjust, or against good conscience." *Oswald* v. *Johnson,* 140 *Ga.* 62-65 (78 S. E. 333), citing *Parker* v. *Glenn,* 72 *Ga.* 637. The converse must be equally true, that a gross excess in price over and above the actual value of property sold might be a circumstance indicating fraud, especially where the relations between the parties to the contract of purchase and sale are confidential in their nature, and more especially where the evidence shows that false representations were made as to the value of the property conveyed, knowingly and wilfully, which induced the contract; and the jury must have found in this case that such representations had been made. "Fraud voids all contracts (Civil Code, § 4254), and the law is liberal in allowing ways and means for relieving from the consequences of fraud, provided the presence and evil of the alleged fraud are first shown." *Harrison* v. *Lee,* 13 *Ga. App.* 346 (79 S. E. 211).

The 14th, 15th, 16th, 17th, 18th, 19th, and 21st grounds of the motion for a new trial complain of alleged errors in the charge of the court, but in view of our ruling as to the admissibility of the testimony in reference to the means by which the contract of purchase was obtained from the defendants and the fraud practiced upon them by the plaintiffs, and the relation actually existing between the parties, there is no substantial merit in any of these exceptions; and the charge fairly submitted to the jury the contentions of the parties and the law governing their consideration of the case. It is claimed, for example, in one of these exceptions that the court, in charging the jury as to the defenses set up by the defendants, erred in stating that they contended that the Cherry Nectar Company, or Pollock and Smith, "approached" the defendant Skelton. It is insisted that no evidence authorized this charge. The record, however, shows that on one occasion Pollock and Smith invited Skelton to their office by telephone, and that they then and there made to him the first definite proposition in regard to the purchasing of the said West Point plant; and this certainly authorized the charge on this point, regardless of the fact that Skelton may have theretofore approached them.

The exception in the 21st ground is that the court erred in charging the jury that "The intention of the parties may differ among themselves. In such case the meaning placed on the contract by one party, and known to be thus understood by the other party at the time, shall be held as the true meaning." It is not contended that this instruction (which is in the language of the Civil Code, § 4267) is not a correct statement of the law, but it is insisted that it had no application to the evidence; that in the instant case the terms of the contract are plain and unambiguous, and there was no evidence of misunderstanding on the part of the defendants as to the meaning of the contract of sale, signed by defendants and plaintiffs. Admitting, for the sake of the argument, that this is true, it does not appear that the plaintiffs suffered any injury by the charge in question. The verdict rendered involves a finding that this contract was a nullity on account of the fraud practiced by the plaintiffs in order to procure it, and since, under our ruling hereinbefore stated, parol evidence was admissible to set up the only actual contract made (this written contract obtained by fraud being a mere nullity from its very inception), no injury resulted to the plaintiffs from this charge.

The plaintiffs in one of these grounds complain that the court referred to the Cherry Nectar Company in connection with the contract of sale to the defendants, and that no evidence warranted this reference. This could not authorize a reversal, since there was much evidence from which the jury might infer a very close connection in interest between that company and the plaintiffs, Pollock and Smith, the president and the secretary of the company; and, after all, the charge objected to merely stated the contentions of the defendants as set out in their plea.

On the whole, as stated above, we see no substantial merit in any of the objections to the charge of the court; and since our ruling as to the extent that parol evidence was admissible to set aside and void the written contract covers in effect the only real issue raised by these various exceptions to the charge of the court, it would be useless to attempt a detailed discussion of the exceptions. The mere statement of the seven exceptions referred to occupies eight pages of the type-written record, more or less argumentative, and such a discussion would require exhaustive and exhausting comment altogether unnecessary.

In the 20th ground of the motion for a new trial it is contended that the verdict is contrary to the charge of the court, since the court charged the jury: "If you find in this case, therefore, that it might have been understood by one of the parties that they were to buy the property for them, for the defendants, and not so understood by the others, there would have been no contract of agency existing between them; the relation of principal and agent between them would not exist." It is contended that the evidence showed without contradiction that the plaintiffs did not understand that they were acting merely as agents for the defendants, and there was no statement in the evidence for either side that the plaintiffs were in fact to act as agents in purchasing the plant. We think this contention is not well founded, since the testimony of Skelton would have authorized the jury to infer that both he and the plaintiffs understood that the plaintiffs were to act as agents for him, or for him and Bruce; and this notwithstanding that Skelton testified that he did not remember that the plaintiffs had said in so many words that they would act as agents; for he testified that they agreed to buy the plant for him, and, taking his testimony as true, it establishes that he understood that the plaintiffs were to act

as his agents, and the plaintiffs knew that he so understood the matter. This may or may not have been the fact, but there was evidence from which the jury might have so inferred, and they so found.

In the 22d and 23d special grounds of the motion for a new trial the plaintiffs "insist" that the court did not construe for the jury and give in charge to them the legal construction of the written contract of sale from the plaintiffs to the defendants which was introduced in evidence, and failed to charge the jury that this contract, *prima facie*, showed a sale directly from the plaintiffs to the defendants of the bottling plant involved. It does not appear that there was any timely written request for a charge of this character; and it appears that the contract referred to was plain and unambiguous, and needed no construction by the court. Besides, no construction of this contract could possibly have availed anything to the plaintiffs, since the jury found it to be void on account of fraud in its procurement, and it would have no binding effect upon the defendants, no matter what the court might have construed it to mean.

Reviewing the entire case and all the evidence adduced, it is impossible, and it would not be proper for us, to suggest whether in our opinion the apparent weight of the evidence was on the one side or the other. It may be that the verdict deprived the plaintiffs of a $2,000 profit to which they were entitled under the letter of the law, but since we find no material error committed by the trial court, and the jury declared in favor of the defendants, and the trial judge in his discretion saw fit to overrule the motion for a new trial, his judgment refusing the motion is

*Affirmed. Roan, J., absent.*

ON MOTION FOR REHEARING.

RUSSELL, C. J. After a very careful consideration of the motion for rehearing the court is constrained to deny it. It is evidently predicated upon a misapprehension, either of the record or of the previous decisions of this court. The case is so fully covered by the opinion of Judge Wade, in behalf of the court, that we refer only to one phase thereof. Counsel for the plaintiffs in error insist that this court has decided the case upon an issue not made in the lower court, and conclude by saying that "if the court is of the opinion that the question of the contract being void, because

procured by fraudulent representations, is properly in the case, then the case should be returned to the lower court, in order that this issue may be submitted to and decided by the jury, under proper instructions as to the law governing such questions." As already pointed out by Judge Wade, the case before us is, in effect, a simple suit upon a note (though based on a prior attachment), and not an action based upon the contract to which the defendants' plea referred. The contract was attached to the defendants' answer, as an exhibit explanatory of the alleged fraudulent conduct of the plaintiffs in the procurement of the note. The answer contains sufficient allegations of fraud, though it is not denominated eo nomine, and hence the trial court was clearly right in admitting evidence touching the consideration of the note. The consideration of a note may always be inquired into. If, to secure a contract conceived in fraud, and for no other purpose, the defendants were induced to sign the note, and so, by reason of the fraud, the defendants received no consideration, that fact could be shown—as it appears to us it was shown—to the satisfaction of the jury.

We bear in mind that one who has been fraudulently induced to enter into a contract must either affirm, or disaffirm and offer to rescind, upon discovery of the fraud, but the answer of the defendants in this case amounted to a declaration of their acceptance of the contract, with a demand for damages. If the testimony of the defendants as to agency was credited by the jury, the damages, of course, would be the difference between the amount actually paid for the property by Pollock and Smith as the defendants' agents, and the amount which Pollock and Smith falsely and fraudulently reported to Skelton they had paid.

The insistence of counsel that our decision was based upon an issue foreign to the case appears to be based upon the fact that the trial judge, in his instructions to the jury, made no reference to the contract being void, and did not charge in reference to fraudulent representations, or fraud in the procurement of the contract, or instruct the jury what fraud would void the contract. Without referring to the charge of the court, and conceding the fact upon which this contention rests to be correctly stated, it would in no sense affect the ruling here. The case and the issues are formed by the pleadings, and depend for their support upon the evidence adduced. If, upon the issues thus presented, the evidence authorized

the conclusion reached by the jury, it becomes entirely immaterial what instructions were given or omitted by the trial judge, unless such instructions or the failure to give instructions can reasonably be said to have contributed to a result which ought not to have been reached. "The validity of a verdict is to be tested by the law as it is written, and not by the law as it is given in charge." *Spence* v. *State*, 7 *Ga. App.* 825 (68 S. E. 443). "If the result reached by the jury would have been the correct conclusion of the case had the judge ruled or charged in accordance with the contentions of one of the parties to the case, the verdict will not be set aside merely because the judge erroneously . . . omitted to give in charge to the jury a principle which should appropriately have been included within his instructions. In other words, if the result reached would have been the same had the court ruled properly, and if the jury found rightly in spite of judicial error, the finding will not be set aside in order that the same result may be reached by a proceeding free from legal error." *Birmingham Fertilizer Co.* v. *Dozier*, 13 *Ga. App.* 760 (79 S. E. 927). See also *Young* v. *State*, 10 *Ga. App.* 116 (72 S. E. 935); *Register* v. *State*, 10 *Ga. App.* 633 (74 S. E. 429); *Jones* v. *State*, 12 *Ga. App.* 135 (76 S. E. 1070). The contract in this case is merely collaterally involved; the suit was upon a note; the validity of the consideration was subject to parol proof; and certainly, therefore, it was admissible for the defendants to refer to the contract which was in a sense ancillary to the parol evidence of fraud, in pointing out how the note was without consideration.

*Rehearing denied. Roan, J., absent.*