### 13776.  DOVER & SON *v.* IROQUOIS MANUFACTURING COMPANY.

Where a salesman takes a written order for a barrel of adamite, weighing 600 pounds, at 13 cents per pound, and there is no further description of the subject-matter of the sale in the order, and it contains no warranties, and suit is brought for the purchase price of the adamite, weighing 600 pounds, at 13 cents per pound, under proper pleadings the defendant should be allowed to prove that the salesman told the purchaser that "adamite was a kind of stuff that would stop leaks;" that it "would stop leaks on a house;" and that he (the purchaser) tried it and it would not stop leaks, and that it was wholly unfit for this purpose.

(a) "Parol evidence is admissible for the purpose of applying the terms of the written contract to the subject-matter and removing or explaining any uncertainty or ambiguity which arises from such application." *State Historical Asso.* v. *Silverman,* 6 *Ga. App.* 560 (2) (65 S. E. 296).

Complaint; from city court of Oglethorpe — Judge Greer. May 31, 1922.

*Gilbert C. Robinson,* for plaintiff in error.

*John B. Guerry,* contra.

BLOODWORTH, J.  The Iroquois Manufacturing Company sued Dover & Son for the price of one barrel of adamite at thirteen cents per pound. The written order given the salesman of plaintiff contained the following words: "Verbal agreements will not be recognized; they must be incorporated in writing." One of the pleas filed by the defendant was the following: "For further answer defendants say that a fraud has been practiced upon your defendants; that this adamite did not come up to the representations; that it is entirely a different commodity from that which was bought; that defendants were ignorant of what the word 'adamite' meant; that it was not suitable for the purpose for which it was bought, and in fact could not possibly have been used at all for the purposes for which it was bought; that the

agent who sold this commodity wilfully and fraudulently misre-
presented and gave the wrong meaning and description of what
this commodity was." Upon the trial of the case the defendant
sought to prove that the salesman told him that "adamite was
a kind of stuff that would stop leaks;" that it "would stop leaks
on a house;" that plaintiff put it on the roof of his warehouse,
and it would not stop the leaks, and that it was wholly unfit for
the purpose for which it was bought. The court refused to allow
the defendant to make proof of the above "upon the ground that
it contradicted and varied the terms of a written contract." We
think this was error requiring the grant of a new trial. The
written contract contained no warranties. This case is controlled
by the principle announced in *Hartwell Grocery Co.* v. *Mountain
City Mills Co.,* 8 *Ga. App.* 727 (70 S. E. 48), and the cases cited
in the opinion in that case. In that case Judge Powell said (pp.
728, 729, 730): "There is a difference between admitting parol
evidence to contradict or to vary the terms of a written contract,
or to set up new and distinct terms not expressed in the contract,
and admitting parol evidence to identify the subject-matter of the
contract or to explain ambiguous terms in it. . . In this case
we have a contract which does not describe its subject-matter in
such language that the court can know without the aid of parol
testimony what it means. The contract called for so many sacks
of 'W. than snow' and for so many sacks of 'St. Elmo.' These
words are arbitrary names, the meaning of which is unintelligible
to the court without the aid of parol evidence. They are words
which carry with them certainty of meaning only through the ap-
plication of the maxim, 'that is certain which can be made cer-
tain.' They are ambiguous when standing alone; hence, before
the court could give either party any relief against the other as
to any matter growing out of the contract and involving an un-
derstanding of its terms, it would be necessary that the meaning
of these terms be disclosed to the court. If the writing itself, or
if any other writings contemporaneously executed, disclosed this
meaning, it would be the duty of the court, ordinarily, to look to
these writings, rather than to oral proof to find this meaning.
But since there are no writings giving this meaning, and since
the court cannot give either to the plaintiff or to the defendant any
relief under the contract until the meaning is known, it becomes

necessary to look elsewhere for the meaning. Since the words are arbitrarily used, it is the duty of the court to find out what they meant to the parties when the contract was made, and we know of no fairer way of determining the intention of the parties in using this language than to find out what one said to the other when the contract was made; and this is what the defendant attempted to show and what the court refused to allow it to show. . . To allow the defendant to show what the plaintiff's salesman told the defendant these terms stood for in the contract is not to set up any new or outside verbal agreement of the salesman, in contradiction or variance of the contract, but is merely to aid the court in carrying out the identical written contract, according to its very word and letter, by using the oral negotiations only to the extent of ascertaining what these words and letters (ambiguous and unintelligible in themselves) really mean." See *State Historical Asso.* v. *Silverman,* 6 *Ga. App.* 560 (65 S. E. 293); *Ford* v. *Lawson,* 133 *Ga.* 237 (1 *a*) (65 S. E. 444); *Barrie* v. *Miller,* 104 *Ga.* 312 (30 S. E. 840, 69 Am. St. R. 171). In *Roebling's Sons Co.* v. *Southern Power Co.,* 142 *Ga.* 482 (83 S. E. 138, L. R. A. 1915B, 900), the Supreme Court quoted with approval the following from Carleton *v.* Lombard, Ayres & Co., 149 N. Y. 137 (43 N. E. 422): " The plaintiffs were entitled to something more than the mere semblance or shadow of the thing designated in the contract. They were entitled to the thing itself, with all the essential qualities that rendered it valuable as an article of commerce, and free from such latent defects as would render it unmerchantable. . . . It frequently happens, in large transactions, that the article which is the subject of the contract is described by some vague generic word, which, taken strictly and literally, may be satisfied by a worthless or defective article. In such cases the words may mean more than their bare definition or literal meaning would imply, and impose upon the seller an obligation to furnish, not only the thing mentioned in the contract, but a merchantable article of that name."

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*