23242.  PEEVY *v.* WILKES.

DECIDED DECEMBER 14, 1933.

*W. B. Hollingsworth, W. H. Hardin,* for plaintiff in error.
*R. B. Lambert, O. L. Hathcock,* contra.

BROYLES, C. J.  H. Y. Wilkes brought suit in the municipal court of Atlanta against H. R. Peevy for $279.90, alleging, in substance, that the defendant, acting as agent for the petitioner, secured from H. B. Clary a contract to purchase twenty acres, more or less, of land for $60 per acre; that after securing said sale contract from Clary, the defendant came to petitioner and told him that all he (plaintiff) would be able to get out of the property would be $900 net to him, and, by reason of this representation, prevailed on petitioner to take the $900 for said land; that this representation was false, and the defendant knew it was false at the time it was made; that the defendant fraudulently represented the matter, and failed to disclose the amount paid for the land by Clary; that Clary really paid $1242 for it; and that the defendant was entitled only to a commission of $62.10, or 5%, instead of $342 or approximately 33% which he actually received; and the petitioner prayed for judgment for $279.90, the difference between the amount received by the agent as a result of his fraud, and the amount which he should have received.

The defendant denied the material allegations of the petition,

denied the relation of agency, and averred that the plaintiff "understood and agreed at the time that Peevy's profit from said sale was to be what in fact he received, namely $342."

Verdict and judgment for the amount sued for were rendered for the plaintiff; the defendant's motion for a new trial was overruled; the judgment of the trial court was affirmed by the appellate division of the municipal court; and the judge of the superior court overruled a certiorari and affirmed the judgment of the municipal court. On this judgment error is assigned.

There was ample evidence to show that Peevy, the defendant, was the agent of Wilkes, the plaintiff; that he not only failed to disclose to Wilkes that he had been offered $60 an acre for the property, but actually told Wilkes that $900 net was all that Wilkes could get for the land,—aggregating 20-7/10 acres; that Wilkes agreed to sell for $900 because of these fraudulent representations of his agent to him; and that the agent reaped a profit as the result of this deception, and at the expense of his principal. The undisputed evidence shows that after the deduction of taxes from the $900, the plaintiff received $866.25; and after the deduction of the cost of recording an affidavit the agent received $341.50. E. O. Kellum, treasurer of the Atlanta Title and Trust Company, who closed the transaction, testified: "I don't think it is customary for an agent to receive a commission of 33-1/3%. I asked Mr. Peevy why he was getting that check. . . It looked a little unusual, and that was the reason I asked that question." Wilkes, the plaintiff, testified that he placed with Peevy for sale 46-3/4 acres for $3500; that it was on two different land lots, and that on one of those land lots he had a tract of 20-7/10 acres (this being the one sold). He testified further: "I agreed to take $900, but I didn't know he [Peevy] was getting $60 an acre. . . He told me that this cash offer of $900 was all he could get for me. . . He never did tell me that he had sold this property for $60 an acre. He represented to me that $900 was all that he could get for it, and that if I did not take it I would miss a sale. I said 'What about your commission?' and he said, 'I will cut my commission down.' These were the very words he said."

The defendant testified: "Mr. Wilkes did sign a uniform contract of sale whereby he agreed to sell that property through me for $900 net to him. That contract has been lost or misplaced. I

have made search for that contract without avail. That contract was an agreement whereby H. Y. Wilkes agreed to sell said property through me for the sum of $900 cash net to him. It was further agreed that I was to pay for cost of survey of the property, and should said survey show an acreage in excess of twenty acres, I was to have the profit of said excess in consideration of my agreeing to pay for the cost of said survey."

The issues of fact raised by the pleadings and the evidence were duly passed upon by the judge, sitting without the intervention of a jury, and the judge in his order overruling the motion for a new trial said: "On the hearing of the motion for a new trial in this case, the court being of opinion and finding as a question of *fact* that the real-estate agent, Mr. H. R. Peevy, *while acting as agent* for H. Y. Wilkes in the sale of the land, had a written offer for cash of $60 per acre, but failed to disclose that he had such offer to his principal, H. Y. Wilkes, but made an offer of $900, or $45 an acre, and *thereby secured from his principal* an agreement to sell the property for $900 *without letting him know* that he then had an offer for $60 per acre, the court is of the opinion that this was such bad faith on the part of the agent to his principal as to forfeit any right to commission, or any right to receive the amount of $342 paid to said agent, [and the court] believing that the contract for the sale at $900 was obtained by *fraud,* hereby overrules the motion for a new trial made by the defendant herein." (Italics ours.)   The findings of fact as stated by the trial judge were authorized by the evidence.

The instant case rests on a basis different from that of a contract between a vendor and a vendee; but even such a contract could be avoided by proof of fraud.   In this case the plaintiff relied upon a breach of the fiduciary relation between principal and agent by failure of the agent to disclose vital facts to his principal, and by misrepresentations made by the agent to the principal to the principal's detriment and the agent's profit.   The defendant's contention that he had a written contract from plaintiff in which the plaintiff agreed to sell the land for $900 net, and that the plaintiff is bound by this contract, is without merit, since it is shown that the contract was induced by fraud.   As quoted approvingly in *Pollock* v. *Skelton,* 15 *Ga. App.* 1, 7 (82 S. E. 381), "There is a wide difference between varying the terms of the written contract

by parol or other extrinsic evidence, and showing by parol or other extrinsic evidence that a contract *never existed,* because of fraudulent representations, arts, or devices by which it was induced." (Italics ours.) Section 3583 of the Civil Code of 1910 provides that "The agent must not make a personal profit from his principal's property; for all such he is bound to account." In *Williams* v. *Moore-Gaunt Co.,* 3 *Ga. App.* 756 (60 S. E. 372), the 1st and 3d headnotes are as follows: "1. The relationship of principal and agent, being confidential and fiduciary in character, demands of the agent the utmost loyalty and good faith to his principal. Any breach of this good faith whereby the principal suffers any disadvantage and the agent reaps any benefit is a fraud of such nature as to preclude the agent from taking or retaining the benefit; also from claiming his commission. 3. A contract, no matter how solemnly expressed, obtained by an agent from his principal through a violation of the loyalty and good faith imposed by the confidential relation, is void and is not enforceable in law or in equity." In *Stover* v. *Atlantic Ice & Coal Corporation,* 154 *Ga.* 228 (113 S. E. 802), it was held: "The relation of principal and agent is a fiduciary one and the latter can not make advantage and profit for himself out of the relationship, or out of knowledge thus obtained, to the injury of his principal; and the agency being established, the agent will be held to be a trustee as to any profits, advantages, rights, or privileges under any contract made and obtained within the scope and by reason of such agency." See also *Smith* v. *Brinson,* 145 *Ga.* 406 (89 S. E. 363), where the facts are quite similar to those in the case at bar. If the plaintiff's agreement to sell for $900 was induced by fraudulent representations of the agent to the principal, to the principal's detriment and the agent's profit, then, under the foregoing authorities, a contract as between principal and agent "never existed," and the alleged agreement was "void," and, therefore, could not be enforced. Moreover, there could not have been a ratification by the principal unless he knew all the facts; and the plaintiff testified that he "didn't know he [the defendant] was getting $60 an acre. . . He never did tell me that he had sold this property for $60 an acre."

While, under the authorities cited above, and the findings of fact by the trial judge, which were authorized by the evidence, the defendant was not entitled to any commissions, still, the plaintiff hav-

ing sued only for the unlawful profit made by the agent, the judgment of the superior court overruling the certiorari and affirming the judgment of the trial court is

*Affirmed. MacIntyre and Guerry, JJ., concur.*